NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0486n.06

No. 08-5874

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 09, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF |
| LOUIE HOLLOWAY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| _____ | ) | |

**Before: KEITH, GRIFFIN, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** In September 2002, Louie Holloway, John Green, Eronia Neal, and Charles Nelson attempted to rob pizza delivery man John Stambaugh. During the attempted robbery, one of the robbers shot and killed Stambaugh with a sawed-off shotgun. Based on this crime and Holloway's ownership of two guns not relevant to this appeal, a jury found Holloway guilty of three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); attempted robbery affecting commerce, in violation of 18 U.S.C. § 1951 (Count 4); and carrying and using a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 5). The district court sentenced Holloway to life in prison.

Holloway argues on appeal that the district court clearly erred in finding that the four men intended to rob and kill Stambaugh and that the district court's reliance on this clearly erroneous fact rendered his sentence both procedurally and substantively unreasonable. But the sentence did not turn

on this finding; rather, it turned on (1) the jury's findings that Holloway committed a crime of violence—attempted robbery—and that he knowingly carried and used a firearm during attempted robbery or that he aided and abetted someone else in doing so, and (2) the court's findings that the firearm discharged during the robbery and that the shot killed Stambaugh. Because these findings are undisputed, we **AFFIRM** the judgment of the district court.

## BACKGROUND

During a night in September 2002, Holloway, Green, Neal, and Nelson drove to the Midtown area of Memphis looking for someone to rob. Holloway was armed with a sawed-off shotgun and Holloway and Green were wearing latex gloves.

The four men saw pizza delivery man Stambaugh make a delivery at an apartment building and return to his car. Holloway and Green approached Stambaugh, while Neal acted as a lookout. Neal heard someone scream "Durand," Holloway's nickname, and then Neal heard a shotgun fire. Although Neal did not see Holloway fire the shotgun, he heard the shot and saw Holloway with the shotgun. The shot killed Stambaugh. As the four criminals fled in the getaway car, Green asked Holloway why he shot Stambaugh. Holloway answered that he shot Stambaugh because someone screamed out Holloway's nickname.

In October 2002, a little over five weeks after Stambaugh's murder, police officer Christopher Vaden arrested Green after receiving a call that a black male matching the description of Green had been seen riding a bicycle with a sawed-off shotgun. Although Green no longer had the shotgun when Vaden found him, Vaden learned from Green that the shotgun was in the house at 3202 Nathan Avenue.

Vaden and other officers knocked on the door of 3202 Nathan. Verronia Neal answered and told the officers that she was the only one in the house. (Verronia is Eronia Neal's sister, and she was also Holloway's girlfriend at that time.) The officers secured the area and obtained a search warrant for the house. As the officers approached the house, Holloway came out with his hands up and was taken into custody. The officers searched the home and found a loaded, sawed-off shotgun hidden in a compartment underneath the stove. Just before Holloway was transported away from the scene, he told his girlfriend that he would see her "in about 20 years." Holloway later admitted to a robbery investigator that he had possession of the sawed-off shotgun found at 3202 Nathan.

Because Holloway admitted to possessing the sawed-off shotgun and because he had been linked to an unrelated robbery, homicide detectives questioned him about the murder of Stambaugh. Holloway initially denied knowing anything about the murder. But he recanted this denial during a second interview after the investigators confronted him with Green's statements that Holloway was involved in the attempted robbery and that he shot Stambaugh. Holloway then said that he was a lookout during the robbery and murder, but he denied shooting Stambaugh. He implied that Nelson was the shooter.

The jury convicted Holloway on all five counts. At the sentencing hearing, the district court made the following factual findings:

> So we have a very serious crime. What happened? What happened is that Mr. Holloway and three of his friends set out to commit a crime, and they did. They went down into the Cooper-Young neighborhood and found Mr. Stambaugh, who was delivering pizza and had basically no funds on him. And they intended to rob him and to kill him. When I say they, I am speaking of four individuals, Mr. Holloway, John Green, Charles Nelson, and [Eronia] Neal. One could not say with absolute certainty who fired the shot. The gun was found in Mr. Holloway's possession. Several of the individuals said that Mr. Holloway was the killer. But whether he was or not, he had

> both a moral and a legal responsibility for Mr. Stambaugh's death. And he was an active participant in this crime. And he is as liable for it legally as if he perpetrated it.
>
> In my own view, based on the preponderance of the evidence, . . . Mr. Holloway was the shooter. But that is not a factor that I am going to be considering in the sentence. I am going to rely on Mr. Holloway's active participation in the crime as sufficient. So, we have a very serious offense in which Mr. Holloway was a principle participant.

That "very serious crime," as the court later explained, was "the discharge of a firearm during [the] commission of a crime of violence [that] resulted in the death of a human being."

The court calculated the Guidelines range as life imprisonment based on an offense level of 43, and Holloway conceded that this was the correct range. After reviewing the other factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Holloway to concurrent sentences of 10 years' imprisonment on Counts 1-3 (felon in possession of a firearm), a concurrent sentence of 20 years' imprisonment on Count 4 (attempted robbery affecting commerce), a consecutive life sentence in prison on Count 5 (carrying and using a firearm during the commission of a crime of violence), three years of supervised release upon release from prison, and a $500 fine.

Holloway timely appealed his sentence.

## DISCUSSION

For the first time on appeal, Holloway argues that the district court clearly erred in finding that the four men intended to rob and kill Stambaugh because "[t]here was no evidence presented at trial that any of the men involved in the attempted robbery . . . intended to cause death on the night in question." Holloway contends that the district court's reliance on this clearly erroneous fact in turn rendered his sentence of life imprisonment both procedurally and substantively unreasonable. But

Holloway's sentence did not turn on this finding; rather, it turned on the following undisputed facts:

(1) The jury's finding that Holloway knowingly carried and used a firearm while committing

attempted robbery or that he aided and abetted someone else in doing so, and (2) the court's finding

that the firearm discharged during the robbery, killing Stambaugh. Holloway's argument is

unpersuasive because it fails to address these undisputed findings.

## A.      Standard of review

This Court reviews criminal sentences for both substantive and procedural reasonableness.

*Gall v. United States*, 552 U.S. 38, 51 (2007). "Reasonableness is determined under the deferential

abuse-of-discretion standard." *United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010).

In determining procedural reasonableness, this Court assesses "whether the district court

properly calculated the Guidelines range, treated the Guidelines as advisory, considered the 18 U.S.C.

§ 3553(a) factors, selected a sentence based on a reasonable determination of the facts, and adequately

explained the sentence." *Id.* at 350-51. The district court's factual findings are reviewed under the

clearly erroneous standard. *Id.* A factual finding is clearly erroneous where the reviewing court is

left with the definite and firm conviction that a mistake has been made. *United States v. Lucas*, 640

F.3d 168, 173 (6th Cir. 2011). "If there are two permissible views of the evidence, the district court's

determination cannot be clearly erroneous. [*Anderson v. City of Bessemer City*, 470 U.S. 564, 574

(1985).] This Court reviews the evidence in the light most likely to support the district court's

decision." *Id.*

If the sentence is procedurally reasonable, this Court then determines if it is substantively

reasonable. *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). "The essence of a

substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *Brooks*, 628 F.3d at 796. A sentence is rebuttably presumed to be reasonable if it lies within the applicable Guidelines range. *Id.* Moreover, an appellate court cannot justify overturning a sentence just because it "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51.

The standard of review in sentencing cases may also depend on whether the district court asked the "*Bostic* " question. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir.2004). The rule set forth in *Bostic* requires that this Court review procedural-reasonableness arguments raised for the first time on appeal under the plain-error standard if the sentencing judge asked the parties "whether there are any objections not previously raised." *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011). But this rule does not apply to substantive-reasonableness claims because those claims "do not need to be raised before the district court to be preserved for appeal." *Id.* at 185.

After pronouncing the sentence in this case, the district court asked each party the following question: "[D]o you know of any reason other than any reason you have already stated, why the sentence should not be imposed as stated?" (Sentencing Tr., DE 102 at 41) Holloway's counsel replied, "No, Your Honor." Because Holloway's arguments on appeal were not raised below, his challenge to the procedural reasonableness of his sentence is reviewed under the plain-error standard. *See Freeman*, 640 F.3d at 186.

**B.      Procedural and substantive reasonableness**

Holloway contends that his sentence of life imprisonment is procedurally unreasonable because the district court clearly erred in finding that the four men intended to kill Stambaugh and because the district court selected the sentence based on this erroneous fact. He also contends that his sentence was substantively unreasonable "because of the great weight the court gave to the [clearly erroneous] belief that there was intent to kill." Both of these arguments fail, however, because the court did not rely on this fact in imposing a sentence of life imprisonment.

The court explicitly stated that for sentencing purposes, it was "going to rely on Mr. Holloway's *active participation in the crime* as sufficient. So, we have a very serious offense in which Mr. Holloway was a principle participant." (Emphasis added.) That "very serious crime," as the court later explained, was "the discharge of a firearm during [the] commission of a crime of violence [that] resulted in the death of a human being." This crime is based in part on the jury's findings that Holloway committed a crime of violence—attempted robbery—and that during this violent crime he either knowingly carried and used a firearm or aided and abetted one of the other three participants in doing so. The remainder of the serious crime is based on the court's findings that the firearm discharged during the robbery and that the shot killed Stambaugh.

These findings are undisputed and sufficient to justify the court's sentence. Significantly, Holloway conceded that the Guidelines range of life imprisonment as calculated by the court is correct. And the Guidelines support the court's conclusion that Holloway's active participation in the serious crime was sufficient to justify its sentence without relying on its further finding that the

four men intended to kill Stambaugh. Under the rules of relevant conduct set forth in U.S.S.G.

§ 1B1.3(a)(1)(A), (B) (2001), Holloway is responsible for

(A)     all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)     in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction.

Application Note 2 to this guideline provides the following relevant example of these principles:

[T]wo defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim. The second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

Applying this reasoning to Holloway's participation in the jointly undertaken criminal activity of armed robbery, he is accountable for the resulting death of Stambaugh. And a cross-reference to U.S.S.G. § 2A1.1, the guideline for First Degree Murder, was properly applied for the following reasons set forth in the Second Addendum to the Presentence Report:

The United States Sentencing Guidelines for violations of 18 U.S.C. § 922(g), Possession of a Firearm by a Convicted Felon, and 19 U.S.C. § 1951, Obstruction of Interstate Commerce by Robbery, are found at U.S.S.G. § 2K2.1 and 2B3.1, respectively. Pursuant to U.S.S.G. §§ 2K2.1(c)(1)(B) and 2B3.1(c)(1), cross reference guidelines to the substantive offense are to be applied, if, as in this case, death resulted, and/or a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111. In this case, a cross reference to [§] 2A1.1, Homicide/First Degree Murder, was applied. U.S.S.G. § 2A1.1 Application Note No. 1 states that "this guideline also applies when death results from the commission of certain felonies," which, in this case would be the homicide that resulted from the felony offense of armed robbery.

In sum, Holloway's essential argument on appeal—that the sentence was unreasonable because the district court based the sentence on its clearly erroneous belief that there was an intent to kill—fails because its premise is false. The court did not base the sentence on a finding of an intentional killing. It instead based it on the undisputed fact of Holloway's active participation in the crime.[1]

But even if we were to accept the premise of Holloway's argument, the sentence is still reasonable because the district court did not clearly err in finding that the four men intended to kill Stambaugh. The night Stambaugh was killed, the four robbers set out to rob someone armed with a loaded, sawed-off shotgun and possibly other weapons. Both parties agree that one of the four men fired a gun at Stambaugh's chest causing a large, gaping wound that appeared too large to have come from a pistol or rifle, and that Stambaugh died from the gunshot. And in both versions of the shooting described at trial, the shooter shot Stambaugh at close range. Based on these circumstances alone, the district court did not clearly err in inferring, based on a preponderance of the evidence, that the killing of Stambaugh was intentional. The district court's sentence is therefore both procedurally and substantively reasonable.

---

[1]Although the district court's sentence was not based on a finding of an intentional killing, Holloway correctly notes that Application Note 1 of U.S.S.G. § 2A1.1 does state that "[i]f the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted." But as the word *may* makes clear, the decision to depart downward is discretionary with the court. And the discretionary downward departure is contained in an advisory guideline that does not bind the district court. *United States v. Booker*, 543 U.S. 220, 246 (2005); *Gibbs v. United States*, 655 F.3d 473, 479 (6th Cir. 2011). Moreover, because Holloway did not make this procedural-reasonableness argument below, he would need to show plain error, an argument he does not even advance on appeal. *See Freeman*, 640 F.3d at 186.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.