NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0690n.06

No. 19-2440

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 11, 2020 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CHRISTOPHER RISHELL, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, WHITE and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. Christopher Rishell appeals his 240-month prison sentence, which was imposed after he pleaded guilty to one count of assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2. Rishell challenges the application of USSG § 2A1.1, the guideline for first-degree murder, in calculating his base offense level. For the following reasons, we **AFFIRM** Rishell's sentence.

**I.**

Rishell joined other members of his gang in a plot to kill A.S., a member of a different subset of their gang who, in their minds, had "exhibit[ed] disrespect" to Rishell's gang subset in a video posted on Facebook. Rishell had discussed with his fellow gang members the "violation"— a gang term encompassing possible reprisals that ranged from assault to killing—of A.S. on multiple occasions, including during gang meetings, although Rishell was not among those

designated to carry out the shooting. Around 9:30 p.m. on October 7, 2017, the group opened fire on A.S.'s home and on a vehicle parked nearby. Despite setting out to "violate" A.S., they also killed one of their own, R.R., who was struck and killed by a bullet fired by one of the group members. R.R.'s death occurred when he stepped out of his pickup truck to shoot from the street. Two bystanders in a parked car also suffered injuries from the attack. Although he was inside his home on the night of the shooting, A.S. emerged unscathed.

For his role in the shooting, Rishell was indicted for one count of conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 1); three counts of attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) and 18 U.S.C. § 2 (Counts 2, 4, and 6); three counts of assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2 (Counts 3, 5, 7); and one count of using, carrying, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count 8).

Rishell pleaded guilty to Count 7, for aiding and abetting assault with a dangerous weapon in aid of racketeering. The plea agreement specified that the parties disagreed on the correct base offense level under USSG § 2E1.3: Rishell argued that the proper base offense level was 33, while the government argued that the proper offense level was 43. When calculating Rishell's base offense level, the district court started with USSG § 2E1.3, which provides that the court should apply the base offense level pertaining to the underlying crime or racketeering activity. The district court next moved to USSG § 2A1.5, the guideline for conspiracy or solicitation to commit murder, which cross-references USSG § 2A1.1, the guideline for first-degree murder, "if the offense resulted in the death of a victim." USSG § 2A1.5(c)(1). Rishell objected to the base offense level in the presentence report.

The district court sentenced Rishell to 240 months' imprisonment, the statutory maximum for his offense, plus three years of supervised release. Rishell timely appealed.

**II.**

We review for clear error a district court's factual findings regarding the sentencing guidelines, and we give de novo review to a district court's legal conclusions and application of the guidelines to a set of undisputed facts. *See United States v. Kimble*, 305 F.3d 480, 485 (6th Cir. 2002). A decision is not clearly erroneous simply if it is "maybe or probably wrong;" rather, "it must strike us as wrong with the force a five-week-old, unrefrigerated dead fish." *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010) (quoting *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990)). The district court need only find the facts underlying a determination of intent by a preponderance of the evidence to support the application of a greater guidelines range. *United States v. Holloway*, 480 F. App'x 374, 379 (6th Cir. 2012); *United States v. Rogers*, 261 F. App'x 849, 853 (6th Cir. 2008) (explaining that "the government's proof supporting" a cross reference to attempted murder for sentencing "need be shown only by a preponderance of the evidence").

### A. Required Stipulation

Rishell argues first that the district court misapplied USSG § 1B1.2 by utilizing the facts stipulated in his plea agreement to establish a more serious offense than the offense of conviction, because the plea agreement did not include a stipulation specifically permitting the factual statements in the plea to be used for such a purpose. USSG § 1B1.2 provides that a factual statement or stipulation establishing a more serious offense than the offense of conviction may allow for the use of a guideline section applicable to the stipulated offense. USSG § 1B1.2(a). But the guideline's commentary explains that such a stipulation is to be used to render a different

guideline section applicable only if "the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes." USSG § 1B1.2, comment. (n.1). However, Rishell did not object below to the use of a base offense level other than that for assault with a dangerous weapon in aid of racketeering—in other words, for the underlying crime of assault. Instead, he asserted both in the plea agreement and in his objections to the Presentence Report that the proper base offense level is 33, and his brief suggests that he relied on USSG § 2A1.5. Thus, Rishell forfeited that argument, and we will not address its merits. *See Hamer v. Neighborhood Housing Servs.*, 138 S. Ct. 13, 17 n.1 (2017) ("[F]orfeiture is the failure to make the timely assertion of a right . . . ." (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

**B. Premeditation**

Next, Rishell contends that the offense conduct stipulated to in the plea agreement does not specifically amount to first-degree murder or felony murder under USSG § 2A1.1 because Rishell neither acted with premeditation nor proximately caused R.R.'s death. The district court found that Rishell and his cohorts acted with both premeditation and malice aforethought, "to the extent there's any difference between those two things," assigning the fact that "somebody inside the house was not killed and that somebody outside the house was [killed]" to "happenstance."

The district court did not clearly err in finding that Rishell had the requisite intent under USSG § 2A1.1. The commentary to USSG § 2A1.1 provides that the first-degree-murder guideline "applies in cases of premeditated killing" as well as "when death results from the commission of certain felonies." USSG § 2A1.1, comment. (n.1). "A killing is premeditated when it is the result of planning and deliberation," and the "amount of time needed for premeditation" need only be "long enough for the killer to have formed the 'intent to kill,' and 'be fully conscious of that intent.'" *United States v. Ingle*, 460 F. App'x 593, 596 (6th Cir. 2012)

(quoting *United States v. Garcia-Meza*, 403 F.3d 364, 371 (6th Cir. 2005)). The district court's finding that Rishell had specific intent to kill A.S. was a "reasonable inference" based on the record. *United States v. Anderson*, 795 F.3d 613, 617 (6th Cir. 2015).

The plea agreement and the presentence report contained sufficient information to determine that Rishell and his accomplices acted with premeditation. The district court found that Rishell "knew what was going on, assisted and intended to assist in this . . . drive-by shooting with a fully armed company of . . . six or seven individuals." The court further noted that the group of shooters "intended to attack" an "ordinary passenger car parked in front of the subject residence."

That determination was based on sound evidence contained in the plea agreement. Rishell stipulated that the "instant offense, a shooting" occurred after he and other "members of [his gang subset] agreed that A.S. should be violated" in response to A.S.'s disrespect. Before the shooting, Rishell and other gang members discussed the upcoming "violation" at multiple meetings over the course of weeks, and "Rishell knew that his fellow [gang] members were armed with and would use firearms." Rishell helped decide which members would conduct the "violation." And two days before the shooting, Rishell and four other gang members exchanged private messages in a Facebook group message in anticipation of the shooting. The messages contained multiple statements that the district court could reasonably infer demonstrated an intent to kill A.S, and Rishell had included a screenshot photograph of A.S.'s home address. Plus, after the shooting, one of the gang members called Rishell to report on it.

The district court also relied on evidence gleaned from the Probation Department's independent investigation. Although Rishell objected to the inclusion of that evidence in two paragraphs in the presentence report because they were not stipulated to in the plea agreement, he does not raise those objections again on appeal. One of these paragraphs describes how R.R. was

shot by "another [gang] member and died at the scene" after R.R. stepped out of his pickup truck, as well as how two bystanders in a vehicle parked near A.S.'s residence were struck by bullets but survived. Although A.S. suffered no injuries, multiple bullets struck his residence. Other portions of the presentence report likewise provide that Rishell and others "conspired and agreed with one another to murder A.S. for the purpose of maintaining and increasing position in the [gang] enterprise." Notably, even without these two paragraphs, there was sufficient factual information admitted in the plea agreement to support the district court's determination of premeditation.

Thus, the district court did not "clearly err in inferring, based on a preponderance of the evidence, that" Rishell's intent to kill A.S. was premeditated. *See Holloway*, 480 F. App'x at 379.

## C. Transferred Intent

Rishell concedes that the stipulated facts in the plea agreement qualify him for the guideline for conspiracy or solicitation to commit murder, USSG § 2A1.5. Yet he ignores that USSG § 2A1.5(c) instructs a district court to apply the first-degree-murder guideline "[i]f the offense resulted in the death of a victim." USSG § 2A1.5(c)(1). He contends that because R.R. was an accomplice whom the shooters did not intend to kill, R.R. was not a "victim" for the purpose of § 2A1.5(c)(1). That construction of "victim" ignores the concept of transferred intent, to which the district court referred by invoking the "happenstance" fact that R.R. was killed rather than A.S. It is an established principle of criminal law that the intent to kill a particular person can be transferred to another person who is inadvertently killed. *See* 18 U.S.C. § 1111(a) ("Every murder . . . perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree."); *Lewis v. United States*, 523 U.S. 155, 166–67 (1998) (describing 18 U.S.C. § 1111(a) as including "certain

6

instances of transferred intent (*i.e.*, D's killing of A, while intending to murder B)" among the forms of first-degree murder).  The district court therefore properly considered R.R. a "victim" under USSG § 2A1.1.

Thus, the district court did not err in applying the cross-reference for first-degree murder when calculating Rishell's base offense level.

## III.

For the foregoing reasons, we **AFFIRM** Rishell's sentence.