**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Toufik LABIB, Defendant–Appellant.**

No. 01–3045.

United States Court of Appeals, Sixth Circuit.

April 1, 2002.

Before MOORE, COLE, and FARRIS,*
Circuit Judges.

PER CURIAM.

From 1994 to 1998, defendant Toufik Labib and eight others were involved in a scheme to defraud financial institutions and launder money. They used fictitious names, social security numbers, addresses, and telephone numbers to establish bogus American Express merchant accounts and bank accounts. In a plea agreement, Labib pled guilty to 4 of the 20 counts with which he was originally charged: a conspiracy to launder money, 18 U.S.C.A. § 1956(h) (West 2000); the use of unauthorized access devices, 18 U.S.C.A. §§ 1029(a)(2) and 2; bank fraud, 18 U.S.C.A. §§ 1344(1) and 2; and money laundering, 18 U.S.C.A. §§ 1956(a)(1)(B)(i) and 2.

The district court held an evidentiary hearing on Labib's objections to the presentence investigation report. The government's evidence consisted of (1) written debriefing summaries of unsworn statements made by several co-conspirators to IRS Special Agent Richard Lewis, (2) Special Agent Lewis' testimony about those summaries and statements, and (3) bank and credit card records and related documentation. Relying on this evidence, the district court applied two sentencing enhancements: a three-level enhancement for Labib's being a manager or supervisor of a criminal activity involving five or more participants, U.S. Sentencing Guidelines Manual § 3B1.1(b) (2001); and a two-level enhancement based on the total amount of funds laundered through the conspiracy, *id.* § 1B1.3.[1] Labib did not testify on his own behalf regarding these issues.

Labib disputes the court's findings. He argues that the evidence was unreliable and insufficient to show that he acted as a manager or supervisor of the conspiracy, and that the money the others laundered should not have been imputed to him.

## DISCUSSION

A sentencing court's interpretation of the Sentencing Guidelines and sentencing statutes is reviewed de novo and its factual findings are reviewed for clear error. *See United States v. Swiney,* 203 F.3d 397, 401 (6th Cir.2000). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Russell,* 156 F.3d 687, 690 (6th Cir.1998) (quoting *United States v. United States Gypsum*

---

* The Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

1. Labib refers erroneously to a three-level enhancement under Sentencing Guideline § 1B1.3. The record shows a two-level enhancement.

*Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Findings of fact that are crucial to the determination of a defendant's base offense level and criminal history category must be based upon a preponderance of the evidence. *Id.*

I. Aggravating Role as a Manager or Supervisor

Labib argues that the district court relied on unreliable and insufficient information to support an enhancement for his aggravating role as a manager or supervisor under Sentencing Guideline § 3B1.1(b).[2]

■ The Sentencing Guidelines provide: When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability to support its probable accuracy.

U.S. Sentencing Guidelines Manual § 6A1.3(a). Hearsay evidence–such as the summary reports about the statements made by Labib's co-conspirators and Special Agent Lewis' testimony about them–is thus admissible for sentencing so long as it bears some "minimum indicia of reliability." *United States v. Greene*, 71 F.3d 232, 235 (6th Cir.1995).

Labib argues that the district court should not have relied upon the statements made by his co-defendants because they

were inherently unreliable, i.e., they were unsworn and made pursuant to plea negotiations with the intention of shifting blame to him. His contention would have merit if the district court had relied *only* upon the unsworn, uncorroborated testimony of one or two unreliable co-defendants. *See, e.g., United States v. Gibbs*, 182 F.3d 408, 445 (6th Cir.1999) (remanding due to discrepancies between trial testimony and statements made to probation officer by two government witnesses); *United States v. Huckins*, 53 F.3d 276, 278–79 (9th Cir. 1995) (remanding and noting that there was no corroborating evidence to support co-defendant's unsworn testimony during plea negotiations); *United States v. Fennell*, 65 F.3d 812, 813 (10th Cir.1995) (remanding and noting that enhancement was made *solely* on the uncorroborated, unsworn allegations made by witness to probation officer over the telephone). The record shows that the district court took much more than this into account.

The district court held an evidentiary hearing and admitted the summaries of unsworn statements made by four co-defendants, the testimony of the agent who prepared those summaries, and corroborating financial records. Two of the co-conspirators, Chokrane and Benhamaid, specifically detail Labib's supervisory role in the conspiracy. Included are statements as specific as which checks were endorsed by Labib, and which handwriting was Labib's on an application for a post office box used during the conspiracy.

Contrary to Labib's assertions, the other two co-conspirators gave statements consistent with Labib's supervisory role. Mraih never says explicitly that Labib directed him to take certain actions, but he does say that Labib gave him checks to

---

**2.** Section 3B1.1(b) provides: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."

deposit, drove him to the bank in a rented car so Mraih could cash fraudulent checks, and instructed him to make checks out to Labib and another co-conspirator to decrease outside suspicion. Similarly, Taziny notes that he opened a fraudulent account in Labib's presence, that he received a check from Labib, that he wrote a check payable to Labib, and that Labib purchased and used a car with the proceeds from the conspiracy.

■ The statements of four co-conspirators and corroborating financial records are sufficient to prove by a preponderance of the evidence that Labib served as a manager or supervisor of the conspiracy. As the district court accurately summarized:

> [W]hile there were some discrepancies within the statements of the co-conspirators or co-defendants Taziny, Mraih, Chokrane, and Benhamaid, one thing is clear; that in terms of the significance of Mr. Labib's role, he was more than a foot soldier but less than Rafik Chokrane, who clearly was the mastermind behind this. He was the general, if you will.

Nothing in the record refutes this conclusion. The court did not clearly err by applying a sentencing enhancement for Labib's aggravating role.

## II. Amount of Laundered Funds

■ Labib argues that the district court should not have imputed to him the entire amount of funds laundered by the conspiracy and then applied a sentencing enhancement under Sentencing Guideline § 1B1.3: Relevant Conduct (Factors that Determine the Guideline Range).[3] The court examined the financial records, heard testimony from Special Agent Lewis, deducted $9,975.51 for which there was no documentation, and arrived at a total financial loss from the conspiracy of over $300,000, which was less than the figure recommended in the presentence report. Labib contends that the only amount that should be imputed to him is what was clearly documented to have passed through his hands or his accounts, $92,500.80.

Under the Sentencing Guidelines, a defendant is accountable for the conduct of other conspirators only if that conduct was (1) in furtherance of the jointly undertaken criminal activity, and (2) reasonably foreseeable to him. *Swiney*, 203 F.3d at 402; *see* U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) & cmt. n. 2. In light of this, we have adopted the two-prong test set forth in *United States v. Studley*, 47 F.3d 569, 574 (2d Cir.1995). To hold a defendant accountable for the acts of the entire conspiracy, under Sentencing Guideline § 1B1.3(a)(1)(B) the district court must make two particularized findings: (1) that the acts were within the scope of the defendant's agreement; and (2) that they were foreseeable to the defendant. *United States v. Campbell*, 279 F.3d 392, 399–400 (6th Cir.2002).

There is ample evidence that the district court made particularized findings with respect to both the scope of the defendant's agreement *and* the foreseeability of his co-

---

3. Section 1B1.3(a)(1)(B) provides that a specific offense characteristic shall be determined by considering the following:

> [I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

conspirator's conduct. At sentencing, Labib's counsel relied on *Studley* for his argument that Labib was not responsible for the funds laundered by the others. After hearing extensive arguments on the issue, the court cited *Studley* and applied the two-prong analysis as follows:

> There is no question in my mind that this was a jointly undertaken criminal activity and the acts perpetrated by Mr. Labib were in furtherance of the jointly undertaken criminal activity. And I base that on the documents that we have received in evidence and on the testimony of Agent Lewis and your client has pleaded guilty to a conspiracy count. Secondly, the Court believes that it is reasonably foreseeable that all of these matters would have taken place in furtherance of the conspiracy. That's why the Court specifically rejects the argument that the October 1995 transaction should not be included because at the time Mr. Labib was out of the country. The Court specifically asked and inquired of you whether the scheme had begun at the time of the deposit, and of course the scheme had begun. So simply because Mr. Labib was not physically present when an act was done in furtherance of a scheme that he helped set up is not sufficient to negative the fact that it was an integral part of the scheme.

The district court's conclusions are supported by the record. As to the scope of the conspiracy, Labib was found to have played a managerial role in the entire scheme. It is undisputed that nearly one-third of the conspiracy's proceeds passed *directly* through his hands or accounts. In addition, the documentary evidence and Agent Lewis' testimony show that Labib opened numerous fraudulent accounts, provided information to the co-conspirators so that they could open fraudulent accounts, and held mailboxes tied to his co-conspirators' fraudulent accounts. Labib pled guilty to this conspiracy and gave information to the government about his co-conspirators. As to foreseeability, it was reasonably foreseeable, given his extensive knowledge and management of the conspiracy, for his co-conspirators to launder money through channels that could not be directly tied to him.

There is no challenge to the veracity of the financial documents. The numbers calculated for the conspiracy are not disputed. The court did not clearly err in imputing the total amount of the conspiracy to Labib and, consequently, applying a sentence enhancement.

AFFIRMED.