NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1280n.06

No. 10-2094

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Dec 12, 2012***

DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GERALD RICHARDS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF MICHIGAN


OPINION

---

**Before: COLE and KETHLEDGE, Circuit Judges, and THAPAR,** * **District Judge**.

**AMUL R. THAPAR, District Judge.** Gerald Richards appeals both the acceptance of his guilty plea and the reasonableness of his sentence. For the reasons discussed below, we affirm his conviction but remand for resentencing.

**I.**

In early 2007, Gerald Richards conspired with Dr. Sohrab Shafinia to distribute oxycodone. Richards would pay Dr. Shafinia in cash for prescriptions of oxycodone. He also provided Dr. Shafinia with a list of other people who should receive prescriptions. Those people then filled the prescriptions and turned the pills over to Richards, who compensated them in cash or drugs. During the course of the conspiracy, Richards distributed some of the drugs and used others for personal consumption.

---

    * The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

On January 29, 2009, a federal grand jury indicted Richards on one count of conspiring to distribute oxycodone and four counts of aiding and abetting the distribution of oxycodone. Unlike the other indicted co-conspirators, Richards decided to go to trial. On the first day of trial, DEA Agent James Rafalski testified that Richards received an unusually large number of prescriptions from Dr. Shafinia. No further testimony was taken that day. The next morning, Richards informed the court that he wished to plead guilty. Before pleading guilty, Richards had to fill out a questionnaire that indicated, among other things, that he understood the charges against him and wished to plead guilty to those charges. The district court then held a plea hearing and accepted Richards's plea.

After the plea hearing, a presentence report was prepared. That report included a proposed sentencing guidelines range of 151 to 188 months. Richards objected to the presentence report's drug quantity determination and the proposed three-level enhancement for his managerial role in the offense. The district court held a two-day sentencing hearing and at the conclusion of the hearing overruled Richards's objections. The district court varied downwards from the guidelines due to Richards's charitable activities and sentenced Richards to concurrent 135-month sentences on each count.

## II.

Richards's argument with respect to his guilty plea is a moving target. In his opening brief, Richards makes two claims. First, he argues that he did not knowingly plead guilty to all of the charges. Second, he argues that the district court failed to ensure that he understood the charges against him as required by Federal Rule of Criminal Procedure 11(b)(1)(G). In his reply brief, Richards characterizes his initial argument as a challenge to the factual basis for Count 26, which charged him with aiding and abetting the distribution of oxycodone to Charles Smith.

Richards did not raise these claims below, so our review is for plain error. *See United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007). A plain error is (1) an error, (2) that is obvious, and (3) that affects substantial rights. *See United States v. Olano*, 507 U.S. 725, 732–35 (1993). A court may reverse for plain error only if the error seriously affects the fairness, integrity, or reputation of judicial proceedings. *See id.* at 735–37.

Richards first argues that his guilty plea is invalid because he did not realize he was pleading guilty to all of the charges against him. A guilty plea is valid if given knowingly, voluntarily, and intelligently. *See Brady v. United States*, 397 U.S. 742, 748 (1970). A reviewing court assesses the validity of a guilty plea under the totality of the circumstances. *Id.* at 749. Richards argues that the district court erred when it accepted his guilty plea to all charges. Why? Because, says Richards, when the government summarized the facts it would be able to prove at trial, he disagreed with some of those facts. By doing so, he thought he had excluded the charges related to those facts from his guilty plea and therefore did not know he was pleading guilty to all of the charges against him. But the record does not support Richards's argument. All of Richards's actions indicated that he wished to plead guilty to all of the charges against him. Richards initially pled not guilty. After one day of trial, Richards told the Court that he wished to end the trial and enter a guilty plea. R. 110 at 4. He then indicated that he wished to plead guilty to the charges against him three times: in a guilty plea questionnaire provided to him before his plea hearing, at the start of his plea hearing, and at the end of his plea hearing. R. 110 at 3; R. 107 at 7; R. 107 at 25. Richards's counsel confirmed that Richards was pleading guilty to all of the charges against him. R. 110 at 5. Richards never asked if he could plead guilty to less than all the charges. He never qualified his plea. He never moved to withdraw his plea. In the face of Richards's expressed desire to plead guilty to all of the charges against him, the district court cannot be faulted for failing to intuit Richards's unexpressed desire

not to do so. Therefore, the district court did not err, let alone plainly err, when it accepted Richards's guilty plea.

Richards's second argument is that the district court failed to ensure that he understood the nature of the charges against him–specifically Count 25, which charged him with aiding and abetting Dr. Shafinia's distribution of pills to Richards.[2] Under Rule 11(b)(1)(G), district courts cannot accept a plea without first ensuring that the defendant understands "the nature of each charge to which the defendant is pleading." When reviewing a guilty plea, we may look to the plea colloquy and the proceedings leading up to the plea colloquy to determine whether a criminal defendant understood the charges against him. *See United States v. McCreary-Redd*, 475 F.3d 718, 722–23 & n.4 (6th Cir. 2007). Here, the record shows that the district court did not err in accepting Richards's plea. First, at the beginning of his trial, less than twenty-four hours before Richards entered his guilty plea, the prosecutor explained in detail each element of the counts against Richards and what the government would have to show to meet its burden of proof. R. 109 at 24–29. Second, in his guilty plea questionnaire and again at the beginning of the plea hearing Richards stated that he had spoken with his counsel, had his questions answered, and understood the nature of the charges against him. R. 110 at 3; R. 107 at 12. Richards did not say he was confused about Count 25 at any point during the plea hearing, and he did not move to withdraw his guilty plea after the hearing. In support of the argument that he did not understand the charges against him, Richards points to one statement by his counsel. At the end of the plea hearing, defense counsel stated that even though Richards was pleading guilty to Count 25, counsel was not sure it was a crime for

---

[2] In his brief, Richards states that the district court also failed to ensure that he understood the charges against him in Counts 1 and 26, relating to Charles Smith. He does not expand on or explain this argument, so the argument is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (arguments mentioned but not developed are waived).

Richards to aid and abet himself. The government responded that Count 25 charged Richards with aiding and abetting Dr. Shafinia's distribution of drugs to Richards (as the indictment clearly states), not with aiding and abetting himself. Defense counsel responded, "Okay. As long as it's clear," and did not object further. Defense counsel's statement was not about whether Richards understood the charges, but rather about whether Count 25 was a crime at all. And, after the government clarified the charge, neither defense counsel nor Richards raised any concerns. More importantly, this colloquy did not contradict Richards's affirmative statements that he understood the charges against him. Thus, the district court did not err.

Richards's third and final argument is that the government failed to establish a factual basis for his guilty plea to Count 26, relating to his use of Charles Smith to obtain prescriptions from Dr. Shafinia. He makes this argument only in passing and makes it clear only in his reply brief. Under Rule 11(b)(3), a district court must ensure there is a factual basis for a guilty plea "[b]efore entering judgment." Fed. R. Crim. P. 11(b)(3). This means that the sufficiency of the factual basis is evaluated at the time of sentencing, rather than at the time of the plea hearing. *See United States v. Bennett*, 291 F.3d 888, 894 (6th Cir. 2002) (noting Rule 11(b)(3) requires the reviewing court to evaluate the factual basis at the time of judgment, not at the time the plea is accepted). While the plea hearing on this score was less than perfect, the sentencing hearing produced an ample factual basis for Richards's plea to Count 26. At the hearing, Dr. Shafinia testified that there was never any medically justifiable reason to prescribe Smith oxycodone. Instead, he issued oxycodone prescriptions to Smith because Smith was on a list of names Richards gave him. R. 121 at 50–51. He gave some of the prescriptions in Smith's name directly to Smith, and he gave others to Richards. R. 121 at 26, 49–50. Agent Rafalski described his interview with Charles Smith, during which Smith stated that he would visit Dr. Shafinia to obtain prescriptions, fill those prescriptions, and turn

the pills over to Richards. R. 121 at 93–96. Since there was a factual basis at the time judgment was imposed, any error by the district court in accepting the plea was harmless and definitely not plain.

## III.

Richards challenges both the procedural and substantive reasonableness of his sentence. On the procedural front, he argues the district court erred when it: (1) calculated the number of pills attributable to him thereby reaching an incorrect base offense level, (2) applied a § 3B1.1(b) enhancement for a managerial role in the offense, and (3) calculated his criminal history category. On the substantive front, he argues the district court gave short shrift to the requirement that a sentence be sufficient, but not greater than necessary, to provide appropriate punishment for the offense. Only the challenge to the criminal history category calculation succeeds.

## A.

The base offense level for drug offenses is calculated with respect to the amount of drugs involved. U.S.S.G. § 2D1.1. Richards pled guilty to a conspiracy involving controlled substances. He is therefore accountable for all pills "with which he was directly involved" and all "reasonably foreseeable" pills involved in the conspiracy. U.S.S.G. § 1B1.3 cmt. n.2. Richards argues the district court incorrectly included 1,430 pills from prescriptions issued to Richards and 510 pills prescribed to Charles Smith. A district court's drug quantity calculations are reviewed for clear error and must be supported by a preponderance of the evidence. *See United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008).

The crux of Richards's argument is that Smith's prescriptions and most of Richards's prescriptions were obtained for legitimate medical purposes, not illegal ones. As mentioned above, Dr. Shafinia testified that there was no medically justifiable reason to prescribe oxycodone to Smith and that he wrote prescriptions to Smith because Richards asked him to do so. Dr. Shafinia also

testified that although Richards was in some pain, there was never a medically justifiable reason to prescribe him oxycodone. R. 121 at 20–22, 44–46. Only Richards's testimony contradicted Dr. Shafinia. Richards testified that he had been in pain all his life due to his bad knees and football injuries. He also stated that Dr. Shafinia examined him during every visit. Finally, he stated that he never obtained a prescription in Smith's name. *See* R. 139 at 16–18. The district court weighed the credibility of the witnesses and determined that Dr. Shafinia was more credible than Richards. R. 127 at 5–6.

Richards argues that Dr. Shafinia's testimony could not be trusted because he was a co-conspirator and stood to gain from his testimony because his plea agreement was not final. But the district court was not required to treat Dr. Shafinia's testimony as not credible based on those facts. *See United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (testimony from a co-conspirator may be considered); *United States v. King*, 169 F.3d 1035, 1043 (6th Cir. 1999) (the fact that a witness has something to gain is part of the court's credibility determination). Despite Richards's insistence to the contrary, the district court explicitly considered Dr. Shafinia's potential motives when making its credibility determination. R. 139 at 93–94. The district court nonetheless concluded that Dr. Shafinia was telling the truth. And the fact that the district court admitted that the credibility determination was a close call does not, as Richards argues, mean the district court made a mistake. Instead, it shows why a district court's credibility determination receives "great deference." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007). A district court sees and hears witnesses, whereas a reviewing court sees only a cold record. That difference allows the district court to make better credibility determinations—determinations that are often the only way to resolve close calls. *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990).

Furthermore, other evidence in the record bolsters the conclusion that neither Richards nor

Smith obtained pills for legitimate medical use. Agent Rafalski's testimony confirms Dr. Shafinia's. Agent Rafalski described his interview with Charles Smith, during which Smith stated that he turned over his prescriptions to Richards. Agent Rafalski also testified about Richards's interview after his arrest, during which Richards admitted to: (1) filling prescriptions in other people's names; (2) taking some of the pills and selling others, and (3) obtaining prescriptions from Dr. Shafinia in out-of-office meetings. R. 121 at 101–02. Roger Hutton's testimony provides more evidence that Richards sold drugs from the outset. Hutton testified that he introduced Richards to Dr. Shafinia, purchased the pills from Richards's first prescription, and helped Richards sell the pills from his second prescription. R. 121 at 70–74. Finally, Warren Austin testified that he filled prescriptions at Richards's request, turned them over to Richards, and was compensated in either cash or drugs. Austin stated that his cousin Jeffrey Barnes had the same arrangement with Richards. R. 121 at 83–89. Each of these witnesses' testimony corroborates that of the others. Only Richards's testimony does not sync up. R. 139 at 26–42. In the end, Richards simply disagrees with the district court's assessment of the evidence. But he cannot point to an error made by the district court. Because there was no error, the attribution of Richards's prescriptions and Smith's prescriptions to Richards cannot be clear error.

## B.

Richards also argues that the district court should not have applied a sentencing enhancement for a managerial role in the offense. Section 3B1.1(b) of the sentencing guidelines provides for a three-level enhancement if the defendant was a manager of criminal activity that involved five or more participants. Although we review the district court's factual findings for clear error, it is unsettled whether we review deferentially or de novo its decision to apply a § 3B1.1 sentencing

enhancement. *See United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007). This uncertainty does not affect the result here, however, because the challenge fails even under de novo review.

Richards argues the enhancement was improper because Dr. Shafinia was the true manager of the conspiracy. But a defendant does not have to be at the top of the criminal food chain to receive a § 3B1.1(b) managerial enhancement. If that were true, the enhancement for leaders and organizers would be superfluous. *See* U.S.S.G. § 3B1.1(a). A defendant can be a manager in a conspiracy involving five or more people if he recruits and exercises control over just one person. *See United States v. Solorio*, 337 F.3d 580, 601 (6th Cir. 2003).

Richards also claims that he only used other people's names to obtain prescriptions and did not actually recruit or exercise control over anyone. The district court found otherwise, and the record supports its conclusion. Agent Rafalski testified that Richards directed Smith to go to Dr. Shafinia's office, get a prescription, fill the prescription, and turn over the pills in return for compensation. Austin testified that Richards directed Austin and Barnes to pick up prescriptions in their names and turn over the pills to him for compensation. Only Richards's testimony contradicts those conclusions. And once again, we defer to the district court's determination that Richards's testimony was not credible when compared to Agent Rafalski and Austin. Therefore, the district court's factual determination was not clearly erroneous, and a preponderance of the evidence supports the application of the enhancement.

## C.

Richards argues that the district court incorrectly calculated his criminal history category. In 1995, Richards was convicted of malicious destruction of a building. On May 2, 1995, Richards was sentenced to 45 days in jail and a term of probation. The 1995 conviction occurred more than ten years before this crime. As such, the 1995 conviction cannot count toward his criminal history

since the sentence of imprisonment was not more than a year and a month. U.S.S.G. § 4A1.2(e)(1), (2). By counting the 1995 conviction, the district court set Richards's criminal history category at II, when it should have been I. The government concedes error on this point. We therefore remand to the district court for resentencing.

## D.

Richards argues that his sentence was substantively unreasonable because it was longer than his co-conspirators' sentences. He points to this as evidence that the district court imposed a sentence that was "greater than necessary" in violation of 18 U.S.C. § 3553(a). We need not address this argument because we are remanding to correct the criminal history category error. *See United States v. Novales*, 589 F.3d 310, 314–15 (6th Cir. 2009).

## IV.

We therefore **AFFIRM** the acceptance of the guilty plea, the drug quantity determinations, and the application of the § 3B1.1(b) managerial enhancement. We **REVERSE** the determination of the defendant's criminal history category, **VACATE** Richards's sentence, and issue a limited **REMAND** for resentencing in accordance with this opinion.