NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0186n.06

Case No. 18-5787

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GADIEL ORTIZ-FLORES, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____/ | ) | |

FILED

Apr 12, 2019
DEBORAH S. HUNT, Clerk

Before: MERRITT, MOORE, and White, Circuit Judges.

**MERRITT, Circuit Judge.** Defendant Gadiel Ortiz-Flores pled guilty to one count of conspiracy to distribute fentanyl and was sentenced to 136 months of incarceration. In this appeal, the defendant argues that the District Court should not have applied the managerial sentencing enhancement and suggests his sentence was disproportionate to that of a co-defendant. Both contentions are without merit. We **AFFIRM**.

**I.**

Ortiz-Flores was indicted in December 2017 in a 6-count indictment with three co-defendants, Brian Hensley, Miguel Esparza, and Megan Nicole Slone. The substance of the allegations was that Oritz-Flores and the other defendants conspired to bring fentanyl from Mexico into Kentucky through Ortiz-Flores's nephew, a supplier. Ortiz-Flores resided with co-defendant

Hensley and allegedly supervised Hensley's activities relating to drug sales. Law enforcement observed Ortiz-Flores participating in multiple drug transactions and a search at his residence uncovered two firearms. He was also found with approximately one kilogram of fentanyl during a traffic stop.

In April 2018, the defendant signed a plea agreement with the government, in which he agreed to plead guilty to Count One of the indictment, conspiracy to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 846. The plea agreement anticipated the sentencing guidelines enhancements that might apply to the defendant and preserved his appellate rights as to those enhancements. Specifically, the enhancements contemplated were: (1) an increase of two levels for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1); (2) an increase of two levels for maintaining a residence for manufacturing or distributing a controlled substance under U.S.S.G. § 2D1.1(b)(12); and (3) an increase of three levels for managing or supervising a criminal activity with five or more participants under U.S.S.G. § 3B1.1(b). Only the third enhancement is at issue in this appeal.

As the parties expected, the Presentence Report applied all of the enhancements listed above and calculated defendant's total offense level at 36. The District Court held a hearing in July 2018 to evaluate whether the enhancements should apply. A Drug Enforcement Agency special agent testified about the investigation, and the Court heard argument from counsel on each disputed sentencing enhancement. First, as to the dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1), the Court declined to apply the enhancement. Second, as to the manufacturing residence enhancement under U.S.S.G. § 2D1.1(b)(12), the Court said there were "too many open issues" to apply the enhancement. Third, as to the manager or supervisor enhancement under U.S.S.G. § 3B1.1(b), the Court applied the three-point increase, finding that Ortiz-Flores had

recruited co-defendant Hensley for the conspiracy and determining that Hensley's statements about Ortiz-Flores's supervision were sufficiently reliable. The defendant then received a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. With a criminal history category I, the guidelines recommended a range of 121 to 151 months. The District Court settled on a sentence of 136 months. The defendant appealed.

**II.**

On appeal, the defendant advances two related arguments. First, he argues that the government failed to prove by a preponderance that he was a manager or supervisor of the criminal activity. The only evidence on this issue was co-defendant Hensley's post-arrest statement, which the defendant characterizes as inconsistent and self-serving.[1] Second, the defendant points to Hensley's sentence of 78 months in prison and says that his own sentence should have been lower. The government responds that a Court may rely on co-defendant statements to apply the managerial enhancement.

The mandatory minimum sentence for the conspiracy charge is ten years. *See* 21 U.S.C. § 841. And because 1.2 to 4 pounds of fentanyl could be attributed to the defendant, the sentencing guidelines recommend a base offense level of 32. U.S.S.G. § 2D1.1(c)(4). Thus, the defendant's sentencing prospects when he pled guilty could be summarized this way:

---

[1] Hensley's statements about Ortiz-Flores's role in the scheme were referenced in the Presentence Report, but on cross examination, the testifying Drug Enforcement Agency agent admitted that he had not been present for Hensley's post-arrest interview. The agent also said that Hensley had lied in this interview to minimize his involvement.

| | |
|---|---|
| Mandatory Minimum | **120 Months** |
| Guidelines Range for 1.2 to 4 pounds of Fentanyl, with History Category I U.S.S.G. § 2D1.1(c)(4) **(+32)** | **121–151 Months** |
| Guidelines Range Applying all Enhancements Sought by the United States and Subtracting Acceptance of Responsibility: U.S.S.G. § 2D1.1(c)(4) **(+32)** (quantity of drug) U.S.S.G. § 2D1.1(b)(1) **(+2)** (dangerous weapon) U.S.S.G. § 2D1.1(b)(12) **(+2)** (premises) U.S.S.G. § 3B1.1(b) **(+3)** (managerial) U.S.S.G. § 3E1.1 **(–3)** (acceptance of responsibility) Total Offense Level: 36 | **188–235 Months** |
| Actual Range Used by the District Court: U.S.S.G. § 2D1.1(c)(4) **(+32)** (quantity of drug) U.S.S.G. § 3B1.1(b) **(+3)** (managerial) U.S.S.G. § 3E1.1 **(–3)** (acceptance of responsibility) Total Offense Level: 32 | **121–151 Months; Sentence Selected by the District Court: 136 Months** |
| Range Assuming Objections to all Enhancements are Sustained: U.S.S.G. § 2D1.1(c)(4) **(+32)** (quantity of drug) U.S.S.G. § 3E1.1 **(–3)** (acceptance of responsibility) U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a) **(–2)** (safety valve) Total Offense Level: 27 | **70–87 Months with Safety Valve[2]** |

Thus, the defendant was facing significant jail time even assuming his counsel could successfully object to some (if not all) of the enhancements. The defendant's final sentence of 136 months is at the lower end of what he might have faced and is fairly close to the statutory minimum.

---

[2] The Presentence Report notes that if all the defendant's objections to the enhancements are sustained, he could be eligible for a further reduction under the so-called "safety valve." [R.86, Page ID 424, ¶ 71]. The Report specifically references U.S.S.G. § 5C1.2(a), which allows the District Court to sentence defendants meeting certain criteria without regard to the statutory minimum (for example, a crime without violence where the defendant was not an organizer). In conjunction with applying U.S.S.G. § 5C1.2(a), the Presentence Report references U.S.S.G. § 2D1.1(b)(17). [R.86, Page ID 424, ¶ 71]. That section of the guidelines has moved to § 2D1.1(b)(18) since the Presentence Report was prepared.

The defendant's role in this conspiracy is the crux of this appeal. The sentencing guidelines suggest that defendants who manage or supervise criminal activity should receive higher sentences:

> Based on the defendant's role in the offense, increase the offense level as follows:
> . . .
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

U.S.S.G. § 3B1.1(b). The defendant concedes that there were more than five people involved in the conspiracy. To qualify for the enhancement, a defendant must have managed or supervised one or more participants of the conspiracy. *United States v. Anderson*, 795 F.3d 613, 617 (6th Cir. 2015). Comment 4 to § 3B1.1(b) specifies that the District Court should consider the following factors in deciding whether to apply the enhancement:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The guidelines also specify that a Court may hear hearsay testimony at sentencing to make its determinations. *United States v. Hunt*, 487 F.3d 347, 352 (6th Cir. 2007). But the information must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

All of this is simply to say that a District Court is not bound by the rules of evidence at sentencing and must find facts by a preponderance standard. In these kinds of cases, when the defendant has pled guilty and the quantity of drugs is not disputed, the question becomes whether a defendant's sentence will be "long" or "longer." We have cautioned that in determining whether to apply a sentencing enhancement, statements of a co-conspirator—who is likely to benefit from turning on a defendant—are to be viewed with special suspicion. *Hunt*, 487 F.3d at 352–53

(concluding that co-conspirators' hearsay statements were reliable because the statements corroborated each other and were supported by circumstantial evidence). The defendant points to *United States v. Labib*, 38 F. App'x 257, 259 (6th Cir. 2002), where we said that relying only on co-defendant testimony might be problematic: "[Defendant's] contention would have merit if the district court had relied *only* upon the unsworn, uncorroborated testimony of one or two unreliable co-defendants" (emphasis in original). *Labib* merely restates the core test of reliability. And in *Anderson*, the District Court relied only on a Presentence Report to apply the enhancement. 795 F.3d at 617–18.

Here, the District Court found that Hensley's testimony was reliable enough to conclude that Ortiz-Flores was managing him in some capacity. Even though the testifying Drug Enforcement Agency agent was not present at Hensley's interview,[3] other evidence corroborated the gist that Ortiz-Flores was a level above Hensley. First, it was Ortiz-Flores who held the connection to the supplier in Mexico, Ortiz-Flores's nephew. Second, although Ortiz-Flores and Hensley were observed during some drug transactions together, on other occasions Hensley engaged in the transactions while Ortiz-Flores waited. Third, Ortiz-Flores paid Hensley to deliver packages. Ortiz-Flores continued these dealings with Hensley even after his wife died of a suspected overdose.

The District Court made detailed findings on this enhancement after hearing both testimony and argument, including soliciting specific admissions from the Drug Enforcement Agency agent

---

[3] This means that Hensley's statements about Ortiz-Flores are likely double hearsay:

1) Hensley told Officers Morris and Dawkins about Oritz-Flores during his post-arrest interview;

2) Those officers told the testifying Drug Enforcement Agency agent, or recorded what Hensley said during the interview; and

3) The Drug Enforcement Agency agent testified to the Court.

But even double hearsay is permitted at these hearings. *See, e.g.*, *United States v. Warner*, 301 F. App'x 137, 141 (3d Cir. 2008).

that Ortiz-Flores was paying and housing Hensley. The District Court also noted that Hensley was involved in the trafficking because of his addiction issues. Under our deferential clear error standard for a § 3B1.1 enhancement, *see, e.g.*, *United States v. Darji*, 609 F. App'x 320, 328 (6th Cir. 2015), this evidence was sufficient to conclude that Ortiz-Flores was managing Hensley and that the three-point sentencing enhancement under § 3B1.1(b) should apply. "A defendant can be a manager in a conspiracy involving five or more people if he recruits and exercises control over just one person." *United States v. Richards*, 508 F. App'x 444, 450 (6th Cir. 2012).

It is of no moment that Hensley received a shorter sentence than Ortiz-Flores. The District Court was thorough in explaining its rationale for the differential, noting that, "I really don't have any doubt about [the] relationship in terms of who was the manager in this particular matter and who was the follower in taking instructions." The Court's evaluation satisfied our precedent on disparate sentences. *United States v. Walls*, 546 F.3d 728, 737, n.3 (6th Cir. 2008). Further, co-defendant Esparza received a 157-month sentence and co-defendant Slone received a 109-month sentence. We cannot say that the sentence the District Court selected for Ortiz-Flores was unreasonable or was grounded in unreliable testimony.

**III.**

There was no clear error in the District Court's finding that Ortiz-Flores was a supervisor or manager, and any disparities in the sentences of Hensley and Ortiz-Flores are explained by the same evidence underlying the supervisor determination. We **AFFIRM**.