RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0176p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

Nos. 14-5741/5742

*v.*

LAMEISHA ANDERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:99-cr-00146-1—John T. Nixon, District Judge.

Argued: January 23, 2015

Decided and Filed: August 4, 2015

Before: MERRITT, MOORE, and DONALD, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** James G. Thomas, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellant. Van S. Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** James G. Thomas, William T. Ramsey, L. Wells Trompeter, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellant. Van S. Vincent, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

MERRITT, J., delivered the opinion of the court in which MOORE and DONALD, JJ., joined. MERRITT, J. (pp. 9–10), delivered a separate concurring opinion.

1

## OPINION

MERRITT, Circuit Judge. The primary question in this sentencing appeal is whether the defendant, Lameisha Anderson, had the requisite intent to be held responsible for the murder of Sharon Duran by Jamal Shakir under the "murder cross-reference" enhancement of U.S.S.G. § 2D1.1(d).[1]

The government argues that under the "relevant conduct" section of the guidelines, U.S.S.G. § 1B1.3(a)(1)(B),[2] it need only prove that the possibility of the murder was "reasonably foreseeable," not that Anderson had knowledge that Shakir intended to murder Duran. The district court found, however, that Anderson had "actual knowledge" that Shakir intended to commit the murder and that Anderson acted as an accomplice. This finding was not clearly erroneous.

---

[1]U.S.S.G. § 2D1.1(d) states in relevant part:

If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 . . . apply § 2A1.1 (First Degree Murder) or § 2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

At the time that Anderson was arrested in 1997, 18 U.S.C. § 1111 provided as follows:

(a) Murder is the unlawful killing of a human being with *malice aforethought*. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, burglary, or robbery; or perpetrated *from a premeditated design unlawfully and maliciously* to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(Emphasis added.)

[2]U.S.S.G. § 1B1.3(a) Relevant Conduct <u>Chapters Two (Offense Conduct) and Three (Adjustments)</u>, says that "[u]nless otherwise specified":

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), *all reasonably foreseeable acts and omissions of others* in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

(Emphasis added.)

Anderson was the girlfriend of Shakir, the violent leader of a large Los Angeles drug conspiracy that operated in Tennessee, as well as other states, from 1992 through 1997. Anderson was active in the conspiracy for approximately three years, ending with her arrest in September 1997. She was not indicted for murder, but pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Anderson challenges her sentence on appeal, arguing that the district court erred in applying the "murder cross-reference" guideline enhancement pursuant to U.S.S.G. § 2D1.1(d)(1), and the three-level enhancement for her role as a "manager or supervisor" in the conspiracy.

**I.**

Although there are many incidents documenting the wide-ranging and violent nature of the conspiracy, we will focus on those incidents in which the government alleges that Anderson was directly involved and those that bear on the challenges she makes to her sentence. After pleading guilty, Anderson signed a plea agreement in 1999, and the government agreed to file a substantial assistance motion for a reduction of sentence if Anderson would testify against her boyfriend, conspiracy leader Shakir. Shakir did not go to trial until 2007, ten years after Anderson was arrested. He was convicted of nine murders after a long trial presided over by Judge John Nixon in Nashville and sentenced to life in prison. Judge Nixon also sentenced Anderson in this case. Anderson was held in pretrial detention throughout this period. Anderson did in fact testify at length as a government witness at Shakir's trial, but the government withdrew the plea agreement because it claims that Anderson did not tell the truth about her role in the murder of Sharon Duran in California in 1995. Prior to Shakir's trial, the government determined that Anderson had knowingly withheld information or provided false information concerning the murder of Duran. It therefore revoked the plea agreement and decided not to file a motion for downward departure based on substantial assistance.

Anderson was not sentenced until June 4, 2014, 15 years after she signed the plea agreement. The record is not clear about how and why this extraordinary delay in sentencing occurred. A presentence report was prepared in October 2001 and revised in April 2014. Anderson received a base offense level of 34 based on 1.5 kilograms of crack attributed to the

conspiracy. Presentence Report ¶ 39. The probation officer increased the base offense level from 34 to 43 by applying the cross-reference to first-degree murder, found in U.S.S.G. § 2D1.1(d)(1), based on the murder of Sharon Duran by Shakir in 1995. Presentence Report ¶¶ 41-42. Anderson was also given enhancements for possession of a firearm in connection with a conspiracy, her role as a manager, the use of juveniles, and obstruction of justice. After subtracting three levels for acceptance of responsibility, the final offense level was 47. This level calls for life imprisonment regardless of the defendant's criminal history category.[3] Presentence Report ¶¶ 39-50. Anderson, however, could not be sentenced to more than the statutory maximum of 30 years for her conviction for drug trafficking under 21 U.S.C. § 846.

Anderson filed objections to the presentence report challenging the application of the murder cross-reference guideline in U.S.S.G. § 2D1.1(d)(1), arguing that the facts did not support application of the cross-reference for murder. She also objected to the imposition of a three-level enhancement for her role as a "manager or supervisor" in the conspiracy pursuant to U.S.S.G. § 3B1.1(b).[4] At the sentencing hearing, the government urged a sentence of 30 years, the statutory maximum for the drug conspiracy charge, while defense counsel urged that Anderson be sentenced to time served, which was almost 17 years at that time. The district court sentenced Anderson to 288 months (24 years) on the drug charge, approximately the midpoint between the two sentencing requests, and 240 months on the money laundering charge, to run concurrently.

The district court overruled Anderson's objections, finding by a preponderance of the evidence that she had "actual knowledge" that Shakir planned to murder Duran. Sentencing Hr'g Tr. at 18-19. The district court also found Anderson played a management role, relying on paragraphs 9, 11 and 13 of the presentence report. *Id*. at 19. No fact witnesses testified, and the district court made no specific findings of fact beyond relying on the presentence report.

---

[3]Under the guidelines, the recommended sentencing range for any offense level over 43 is life imprisonment regardless of criminal history category.

[4]U.S.S.G. § 3B1.1(b) states:

Based on the defendant's role in the offense, increase the offense level as follows:

. . . .

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

## II.

### A. <u>Murder of Sharon Duran and Application of the Murder Cross-Reference</u>

Anderson argues that the district court should not have applied the cross-reference for first-degree murder—raising her base offense level from 34 to 43—because the district court failed to make any specific findings supporting the application of the enhancement and, in any event, the evidence did not support application of the cross-reference for murder. To establish first-degree murder under 18 U.S.C. § 1111, there must be evidence that Shakir killed Duran with "malice aforethought." The question before us is whether Anderson must have shared in that intent.

Shakir murdered Duran on December 13, 1995, in Los Angeles. Several months before her death, Duran had accompanied another member of the conspiracy to locate and move a Cadillac involved in the murder of Solomon Harris. Duran feared she might be tied to Harris's murder through the Cadillac. Anderson met Duran at a bar in Los Angeles on the night of Duran's murder and Duran told Anderson of her fear of being tied to Harris's murder. Anderson reported Duran's statements to Shakir, and Shakir told Anderson to call Duran and set up a meeting later that night. Anderson then drove Shakir to meet Duran outside Duran's apartment building. Shakir got into Duran's car with Duran and instructed Anderson to follow them. Anderson followed them to a side street where Shakir then instructed Anderson to pull her car up ahead of Duran's. Shakir then shot Duran and left the scene in Anderson's car. Presentence report ¶¶ 15-16. Anderson denies that she knew that Shakir was going to kill Duran. Trial Tr. at 4398 (Oct. 31, 2007).

Anderson objected to the application of the first-degree murder cross-reference to her drug conspiracy count because she "did not knowingly participate in the murder of Sharon Duran" and Shakir "did not share his plan to kill Duran with her." Objections to Presentence Report at 1. The government responded that specific intent is not necessary because the "relevant conduct" guideline in § 1B1.3(a)(1)(B) establishes the lesser "reasonable foreseeability" standard.

After hearing from both sides at the sentencing hearing, the district court specifically found that the evidence supported a finding that Anderson had "actual knowledge" of Duran's murder and applied the murder cross-reference enhancement. The court did not rely on the lesser "reasonably foreseeable" standard. Sentencing Tr. at 18 ("I'm going to make a finding that [Duran's murder] was in furtherance of the conspiracy and goes beyond reasonable foreseeability to actual knowledge."). As discussed below, we hold that the district court's factual finding that Anderson had "actual knowledge" that Shakir intended to kill Duran was not clear error, as Anderson's knowledge may be inferred from her substantial participation in the course of events before and after Duran's murder. Actual knowledge necessarily satisfies the lesser reasonable-foreseeability standard. Thus, we assume without deciding that the government was required to prove actual knowledge and affirm the district court's decision that Anderson had that intent.

A reasonable inference may be drawn from the facts relied on by the district court that Anderson knew of Shakir's plan to murder Duran and facilitated it. Anderson admitted that she talked to Duran the night Duran was murdered about Shakir's previous murder of Harris and discussed the meeting with Shakir. Based on this, it appears that Shakir decided to kill Duran. Anderson immediately followed Shakir's instruction to drive him to meet Duran. The two left the murder scene together with Anderson driving her car. Anderson advised Shakir of Duran's statements concerning the previous murder of Harris, drove him in her car to the murder scene, waited nearby in her car for him to murder Duran, and then immediately took him with her as they left the murder scene together. She had been present before when Shakir had threatened and injured people, and Anderson had arranged meetings where Shakir had inflicted serious injury on people who did not obey him. She knew that he had committed other murders. Although she testified that she did not know about any murder plans in advance and did not knowingly facilitate any of the multiple murders carried out by Shakir, including Duran's murder, *see, e.g.*, Trial Tr. at 4332 (Oct. 31, 2007); Presentence Report ¶ 26 (denying advance knowledge of Woody Pilcher's murder), the district court's finding that Anderson had actual knowledge of Duran's murder was a reasonable inference to make. Anderson's history with Shakir and her actions in facilitating Shakir's murder of Duran support the district court's finding that Anderson had actual knowledge of Shakir's intent to kill Duran.

**B.  Anderson's Role in the Offense**

Anderson also challenges the three-level enhancement she received for her role as a "manager" in the conspiracy pursuant to U.S.S.G. § 3B1.1(b).  To qualify for this enhancement, a defendant must have managed or supervised "one or more other participants."  U.S.S.G. § 3B1.1(b) at cmt. 2; *United States v. Castilla-Lugo*, 699 F.3d 454, 460 (6th Cir. 2012).  But "management or supervision of the property, assets, or activities of the criminal organization may warrant an upward departure but not an enhancement." *Castilla-Lugo*, 699 F.3d at 460.

Courts consider the following factors to determine whether to apply an enhancement under § 3B1.1:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S. Sentencing Guidelines Manual § 3B1.1, cmt. n.4; *see United States v. Jeross*, 521 F.3d 562, 579 (6th Cir. 2008).  A district court need not find each factor in order to warrant an enhancement. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006).

The district court relied only on the presentence report to impose the three-level enhancement and did not make any separate factual findings during the sentencing hearing.  The presentence report states that Anderson would give instructions to couriers, such as telling them not to speak to others and where to take shipments.  Presentence Report at ¶ 9.  She also traveled with two juvenile couriers from Nashville to a Las Vegas hotel and then on to Los Angeles.  Anderson's job was to "keep them in line" and ensure they followed Shakir's instructions, including reporting to Shakir any failure by the couriers to follow his instructions.  *Id.* at ¶ 11.  Once in Las Vegas, the couriers turned over the cash from the drug sales to Anderson who gave it to Shakir.

At the very least, the evidence supports, and Anderson does not dispute, the finding in the presentence report that she supervised two juveniles transporting money and drugs between different cities, which is legally sufficient to support the § 3B1.1(b) enhancement requiring

supervision of one or more participants in furtherance of the conspiracy. Anderson exerted the requisite control over the two juveniles even if she did not recruit anyone or satisfy any of the other listed factors necessary to impose the enhancement. The district court found that the activities detailed in paragraphs 9, 11 and 13 of the presentence report accurately reflected Anderson's conduct and supplied sufficient evidence to support the three-level enhancement for playing a managerial role. Although her role may not have been as extensive as the government contends, the application of the three-level enhancement for Anderson's role as a manager was not in error.

Accordingly, the judgment of the district court is affirmed.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring. Independently of my colleagues who may not agree, I would also point out: There is a clear conflict between the lesser "foreseeability" requirement of the "relevant conduct" guideline and the more difficult requirement of knowledge and intent called for by the cases interpreting 18 U.S.C. § 2, the accomplice liability section of federal statutory law. Seventy-five years ago in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938), Judge Hand held that accomplice liability for aiding and abetting a federal crime under § 2 requires that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." The federal courts have applied this standard for many years. The cases, as well as the Model Penal Code commentary, are collected in a comprehensive *en banc* opinion by the District of Columbia Court of Appeals. *Wilson-Bey v. United States*, 903 A.2d 818, 830-39 (D.C. 2006) (en banc). But without referring to the federal statutory standard for accomplice liability promulgated by Congress, the federal courts of appeals seem to have consistently applied to the murder cross-reference enhancement the lesser "foreseeability" standard set out in the guidelines.[1]

The United States Sentencing Commission has now apparently recognized the inconsistency between its "reasonable foreseeability" standard in § 1B1.3(a)(1)(B) and the Hand standard for accomplice liability articulated above where there is joint criminal conduct. On

---

[1]*See, e.g., United States v. Clay*, 579 F.3d 919, 930 (8th Cir. 2009) ("Section 2D1.1(d) contains a cross reference that is applied when a victim is killed under circumstances that would constitute murder under 18 U.S.C. § 1111. The district court, applying principles of accomplice liability from Guidelines § 1B1.3, found Stovall responsible for the Johnson murder by a preponderance of the evidence and applied the § 2D1.1(d) cross reference . . . . The government contends that it did not have to prove that Stovall solicited Johnson's murder but only prove that the murder was a reasonably foreseeable act in relation to the Stovall drug enterprise. We agree and hold that the district court's application of § 2D1.1(d) did not violate Stovall's due process rights."); *United States v. Gamez*, 301 F.3d 1138, 1148 (9th Cir. 2002) ("That Gamez did not shoot Kirpnick does not foreclose application of U.S.S.G. § 2D1.1(d)(1)'s murder cross-reference. Neither U.S.S.G. § 2D1.1(d)(1), nor U.S.S.G. § 1B1.3(a)(1)(B) require a sentencing court to find that the defendant in fact committed murder in order to apply the cross-reference. All that they require is that the court find that murder occurred in the course of commission of a drug-related conspiracy and that it was reasonably foreseeable and in furtherance of the conspiracy."); *United States v. Thompson*, 286 F.3d 950, 959 (7th Cir. 2002) (Where "th[e] additional Guideline [§ 1B1.3(a)(1)(B)] is in play, the question . . . is whether it was reasonably foreseeable to Spradley, Jones, and White that Willis could be killed, *with malice aforethought (premeditation)*, in furtherance of the conspiracy" in order for the § 2D1.1(d)(1) murder cross-reference to apply.) (emphasis in original).

May 5, 2015, the Commission published in the Federal Register, 80 Fed. Reg. 25782-87, a new provision on "relevant conduct" in which it struck the language in § 1B1.3(a)(1)(B).  It also struck the long note 2 of the accompanying commentary.  The Commission struck from the guideline "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" and substituted language stating that accomplice liability is limited to the "scope" of the plan that the accomplice undertook to carry out.  The new language promulgated by the Commission in U.S.S.G. § 1B1.3(a)(1)(B) is as follows:

> all acts and omissions of others that were—
> (i) within the scope of the jointly undertaken criminal activity,
> (ii) in furtherance of that criminal activity, and
> (iii) reasonably foreseeable in connection with that criminal activity[.]

Notice of submission to Congress of amendments to the sentencing guidelines effective November 1, 2015, 80 Fed. Reg. 25782, 25783 (proposed May 5, 2015).  This change is followed by a long explanation that accomplice liability is limited to the "criminal plan" undertaken, which may be different from one participant to another and different for individual parts of an overall conspiracy.  Judge Nixon's intuition that accomplice liability in this case should require "actual knowledge" anticipated the recent change in the relevant conduct section of the guidelines.