FILED
United States Court of Appeals
Tenth Circuit

May 27, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS ARELLANES-PORTILLO,

Defendant - Appellant.

No. 20-3165

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:17-CR-20074-JAR-11)**

_____

Jacob Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady, Federal
Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Bryan C. Clark, Assistant United States Attorney (Duston J. Slinkard, Acting United
States Attorney, and James A. Brown, Assistant United States Attorney, with him on the
brief), Kansas City, Kansas, for Plaintiff-Appellee.

_____

Before **BACHARACH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

Jesus Arellanes-Portillo pleaded guilty to a collection of federal drug-trafficking,

money-laundering, and immigration crimes. He now challenges the procedural

reasonableness of his sentence. Arellanes-Portillo argues that the district court misapplied

a three-level aggravating-role adjustment in calculating his advisory guideline range for his money-laundering offenses. We hold that the district court plainly erred by basing the aggravating-role adjustment on relevant conduct for his drug offenses and not exclusively for his money-laundering offenses. That violated U.S. Sentencing Guidelines Manual § 2S1.1 Application Note 2(C) (U.S. Sentencing Comm'n 2018).[1] So exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we vacate and remand for resentencing.

## BACKGROUND

### I.    The Indictment

A federal grand jury sitting in the District of Kansas indicted multiple defendants for crimes committed on behalf of a Mexican drug-trafficking organization operating in Kansas City. The indictment charged Arellanes-Portillo with twelve crimes: one count of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii), 18 U.S.C. § 2, and of conspiracy to distribute and to possess more than 100 kilograms of marijuana, in violation of §§ 846, 841(b)(1)(B)(vii), 18 U.S.C. § 2; three counts of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(ii), 18 U.S.C. § 2; one count of possessing cocaine with intent to distribute, in violation of § 841(a)(1) (without designating a subsection (b) penalty provision), 18 U.S.C. § 2; three counts of using a telephone to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b); two

---

[1] Having identified the governing guideline manual, we simply cite the applicable guidelines sections throughout the opinion.

2

counts of money laundering for attempting to transport funds from Kansas to Mexico to promote the conspiracy, in violation of 18 U.S.C. §§ 1956(a)(2)(A), 2; and two counts of knowingly possessing false immigration documents, in violation of 18 U.S.C. § 1546(a).[2]

## II.    The Presentence Report

Arellanes-Portillo pleaded guilty to all counts without a plea agreement. In a written plea petition preceding his guilty pleas, he provided a factual basis for each of the charged offenses.

In the presentence report ("PSR"), the United States Probation Office calculated the advisory guideline range using the money-laundering guideline, § 2S1.1. Under § 2S1.1(a)(1), the PSR set the § 2S1.1 base offense level at 32. It did so by incorporating the offense level from the drug guideline, § 2D1.1(a)(5), (c)(4) for the drug weight involved in Arellanes-Portillo's offense.[3] Next, the PSR added two levels under § 2S1.1(b)(2)(B), based on Arellanes-Portillo's convictions for money laundering under 18 U.S.C. § 1956. After that, the PSR added three offense levels for his aggravated role in criminal activity involving five or more participants, based on § 3B1.1(b). Finally, the

---

[2] Arellanes-Portillo's immigration convictions aren't at issue in this appeal. They don't affect his final advisory guidelines sentencing range. *See* § 3D1.4(c) (explaining that any group of offenses "9 or more levels less serious" than the group with the highest total offense level don't affect the ultimate total offense level).

[3] As we discuss later, the district court at the sentencing hearing upped the incorporated § 2D1.1 "offense level" by another two offense levels to 34 after finding Arellanes-Portillo responsible for maintaining a drug premises under § 2D1.1(b)(12).

PSR subtracted three offense levels for Arellanes-Portillo's timely acceptance of responsibility.

### III.    PSR Objections & Sentencing

Before the sentencing hearing, Arellanes-Portillo objected to the three-level role adjustment. In an Addendum to the PSR, the probation office restated Arellanes-Portillo's objection in these words: "Mr. Arellanes-Portillo was not the manager, someone named Bolo was. We do not believe that the enhancement should apply."[4] R. vol. 3 at 38. The government defended the PSR's aggravating-role adjustment on grounds that "[t]he Tenth Circuit has consistently held that the 'enhancement under § 3B1.1(b) applies to a defendant who exercised some degree of control or organizational authority over someone subordinate to him in the drug distribution scheme.'" R. vol. 3 at 38–39 (quoting *United States v. Cordoba*, 71 F.3d 1543, 1547 (10th Cir. 1995)). The government also cited evidence of Arellanes-Portillo's role in the drug organization.

The probation office sided with the government and retained the aggravating-role adjustment in the PSR. It found that Arellanes-Portillo qualified as a manager under § 3B1.1(b) because "[h]e was the known leader of the Kansas City cell and directed CI1 and CI2 in their drug trafficking activities." R. vol. 3 at 39. So we see that the probation

---

[4] Neither the written objection nor the government's written response are in the record on appeal, so we rely on the Addendum to the PSR for the parties' positions.

4

office and the parties evaluated the aggravating-role adjustment based on Arellanes-Portillo's drug activity, not his money-laundering activity.

At the sentencing hearing, Arellanes-Portillo renewed his objection to the three-level adjustment for his aggravating role in the offense. He contended that he had merely served as a mouthpiece for his superior in the organization, Portillo-Uranga, and that he had lacked "any autonomy in directing the way the organization runs, the way money comes in and out of the country or when drugs come in and out of the country." R. vol. 2 at 205–06. So he argued that he shouldn't qualify for an aggravated-role adjustment. In response, the government rested on its earlier written response to Arellanes-Portillo's PSR objection.

After hearing from the parties, the district court ruled that Arellanes-Portillo had acted as a manager or supervisor as provided in § 3B1.1(b). In support, the court cited testimony that Arellanes-Portillo had been Portillo-Uranga's "right hand man" and been referred to as "the head of the Kansas City cell." R. vol. 2 at 206. Among other things, the court noted that Portillo-Uranga had delegated some of his authority to Arellanes-Portillo "to contact Mike for purposes of delivering money to him to get to the suppliers[.]" R. vol. 2 at 207. It also determined that Arellanes-Portillo had been higher in the organization than some others "in terms of finding stash houses, using them, dropping them when they thought there was law enforcement heat on them." R. vol. 2 at 207. From recorded phone calls, the court found that Arellanes-Portillo "directed people to go pick up drugs or deliver money, again, at the behest of Mr. Portillo-Uranga but, nevertheless, Mr. Portillo-Uranga didn't tell them directly necessarily. He used the defendant to do that

5

because the defendant operated as a manager or supervisor." R. vol. 2 at 207–08. The court further pointed out that Arellanes-Portillo had the authority to cut (dilute) the drugs, that he knew the identity of customers, and that he could set the drug price for some customers. From this, we see that the district court also relied on Arellanes-Portillo's drug activity in assessing the aggravated-role adjustment, though it also mentioned some of his associated involvement with transporting drug proceeds to Mexico.

In the end, the district court accepted the PSR's sentencing recommendations with one exception—it added two offense levels to § 2S1.1(a)(1)'s base offense level for Arellanes-Portillo's maintenance of a drug premises under § 2D1.1(b)(12). Thus, the offense level for the money-laundering offenses rose to 39, minus three offense levels for the timely acceptance of responsibility, which left a total offense level of 36. That, combined with criminal-history category of I, resulted in an advisory guidelines range of 188–235 months of imprisonment. From that, the court imposed a term of 188 months.

Arellanes-Portillo appealed. He no longer argues that his drug activity failed to support an aggravated-role adjustment for his drug offenses. Instead, now alert to § 2S1.1's Application Note 2(C), he challenges the district court's aggravated-role adjustment on a different basis—that it erred by basing the adjustment on relevant conduct for his drug offenses, and not exclusively on relevant conduct for his money-laundering offenses.

**DISCUSSION**

I.      **Drugs and Money-Laundering Convictions**

In evaluating this appeal, it helps to review how the probation office should have structured the PSR and how its skipping steps has led to the need for a resentencing.

First, as mentioned, the PSR didn't separate the drug and money-laundering counts into two separate groups of closely related counts. Instead, citing § 3D1.2(d), the PSR immediately lumped the seven drug-related counts and the two money-laundering-related counts into a single "Count Group 1." Apparently, the probation office mistakenly believed that the drug and money-laundering offenses immediately grouped together because their separate guidelines—§§ 2S1.1 and 2D1.1—are listed in the table at § 3D1.2(d) (though, importantly, in separate rows).[5]

Second, the PSR should have calculated a total offense level for each of the two groups of closely related counts. For the drug-conviction group, the PSR should have calculated a base offense level of 32, added two levels for maintaining a drug premises, and then added three more levels for an aggravating-role adjustment.[6] That minus three

_____

[5] If the Guidelines Manual contemplated this immediate grouping across the § 3D1.2(d) table's rows, it wouldn't need to direct that the closely related groups of drug convictions and of money-laundering convictions later be grouped under § 3D1.2(c). *See* § 2S1.1 cmt. n.6. In grouping under § 3D1.2(c), a court must calculate the total offense levels for each group so that it can apply the one with the highest total level. *See* § 3D1.3(a); *see also* § 3D1.3 cmt. n.2.

[6] As we understand it, Arellanes-Portillo no longer contests that he would qualify for the three-level aggravating-role adjustment for his drug offenses. Even if he did, having reviewed the record, we see more than sufficient evidence to support it.

levels for timely acceptance of responsibility would leave a total offense level of 34. As for the money-laundering group, the PSR should have calculated a base offense level of 34 (the Chapter Two calculation for the underlying drug offenses, as explained above); added two levels for the convictions under 18 U.S.C. § 1956; added zero, two, or three levels for an aggravating-role adjustment (after applying § 1B1.3 to isolate any acts and omissions qualifying as relevant conduct to the money-laundering offenses as then applied to § 3B1.1); and then subtracted three levels for acceptance of responsibility. That would leave a total offense level of 33, 35, or 36.[7]

Third, under § 3D1.2(c), as directed by § 2S1.1's Application Note 6, the PSR should have grouped the two separate drug and money-laundering groups. Under that grouping rule, the PSR would apply whichever group yielded the higher total offense level.[8]

## II.     Standard of Review

Because Arellanes-Portillo contends that the district court misapplied the guidelines, we would ordinarily review de novo. *See United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010). But he concedes that in the district court he didn't raise an objection based on § 2S1.1's Application Note 2(C). So we review for plain error. *See*

---

[7] An offense level of 34 isn't possible, because § 3B1.1 has a minimum two-level adjustment.

[8] Without this § 3D1.2(c) grouping, Arellanes-Portillo's ultimate total offense level would have risen by two offense levels because his drug and money-laundering groups yielded total offense levels within four levels of each other. § 3D1.4(a).

*United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009). Thus, Arellanes-Portillo must show: "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

### III.    Analysis

#### A.    Error

The district court erred by misapplying the Chapter Three aggravated-role adjustment to Arellanes-Portillo's guidelines calculation for his money-laundering convictions. Tracking the probation office and the parties, the district court ran afoul of the guidelines' precise rules for the application of Chapter Three adjustments.

First, when Chapter Two sentencing calculations are self-contained in the guideline of the offense of conviction, §§ 1B1.1(a)(3) and 1B1.2(b) direct courts to calculate Chapter Three adjustments using the relevant conduct of the offense of conviction. Thus, for example, had the PSR calculated the total offense level for the group of closely related drug offenses, it would have used relevant conduct for the drug offenses in evaluating any Chapter Three adjustments. This is illustrated by Arellanes-Portillo's case, in which the Chapter Two offense-level calculation was self-contained in the drug guideline, § 2D1.1, and didn't divert to a different Chapter Two offense guideline by cross reference or special instruction.

Second, when sentencing calculations aren't self-contained in the guideline of the offense of conviction, § 1B1.5(c) generally instructs courts to calculate the Chapter Three adjustments using relevant conduct from the offense associated with the incorporated

guideline.[9] But in the following terms, § 1B1.5(c) also alerts courts that exceptions may apply: "If the offense level is determined by a reference to another guideline under subsection (a) or (b)(1) above, the adjustments in Chapter Three (Adjustments) also are determined in respect to the referenced offense guideline, *except as otherwise expressly provided.*" § 1B1.5(c) (emphasis added).[10]

Here, the probation office, the parties, and the district court overlooked the exception found at § 2S1.1's Application Note 2(C). That note instructs courts to calculate the Chapter Three adjustments for § 2S1.1 based on relevant conduct on the money-laundering offenses, and "not on the underlying offense from which the laundered funds were derived":

> **Application of Chapter Three Adjustments**—Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) [of § 2S1.1] applies, application of any Chapter Three adjustments shall be determined based on the offense covered by the guideline (*i.e.*, the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

§ 2S1.1 cmt. n.2(C).

As discussed earlier, the district court largely based its aggravating-role adjustment for the money-laundering offenses on relevant conduct from the drug

---

[9] Section 2S1.1(a)(1) provides an example of this situation. That subsection uses the underlying offense's offense level in setting its own base offense level.

[10] Subsections § 1B1.5(a) and (b)(1) pertain to cross references and instructions to apply another guideline.

offenses. In doing so, the court followed the lead of the probation office and the parties and proceeded as if the general rule found at § 1B1.5(c) applied. That was error.[11]

Even so, the government argues that the district court didn't err at all. It contends that "Arellanes-Portillo's role in the drug-trafficking organization as a whole was relevant conduct with respect to his role in the money-laundering offenses, and the district court properly considered it in finding that Arellanes-Portillo qualified for the enhancement."[12] Appellee's Br. at 15. This fundamentally misunderstands what relevant conduct is under § 1B1.3—and it contradicts § 2S1.1's Application Note 2(C)'s command.

Section 1B1.3 doesn't leave room for competing versions of what qualifies as "relevant conduct." Section 1B1.3 sets precise boundaries. It declares whose and what

---

[11] Section 2S1.1 has a leakproof valve for admitting or excluding drug-related relevant conduct into the money-laundering sentencing calculation. First, by including the underlying drug offense's "offense level" as its own base offense level, § 2S1.1(a)(1) necessarily incorporates drug-related relevant conduct—here, relevant conduct in support of the drug-weight and the drug-premises enhancements under § 2D1.1. Second, by instructing that any Chapter Three adjustments *not* be determined based on relevant conduct for the offenses underlying the money-laundering offenses, § 2S1.1's Application Note 2(C) seals off drug-offense relevant conduct from the money-laundering calculation for Chapter Three adjustments.

[12] On the other hand, Arellanes-Portillo contends that relevant conduct doesn't even apply here. He says that § 2S1.1's Application Note 2(C) activates the "[u]nless otherwise specified" preface to § 1B1.3. This is wrong. Section 1B1.1(a)(3) directs courts to use relevant conduct to assess specific offense characteristics, adjustments, cross references, and special instructions. Nothing in Application Note 2(C) says otherwise. Instead, that note concerns *what* relevant conduct applies in assessing Chapter Three adjustments. It opts for relevant conduct for the money-laundering offense, not relevant conduct for the underlying offense.

11

"*acts and omissions*" count as relevant conduct in assessing the applicability of base offense levels, specific offense characteristics, cross references, special instructions, and Chapter Three adjustments. *See* §§ 1B1.1(a)(1)–(3); 1B1.2; 1B1.3(a), (b). Those precise acts and omissions are the relevant conduct available for use in determining the applicability of Chapters Two and Three sentencing slots.[13] In short, the government must justify an aggravating-role adjustment for money-laundering convictions with money-laundering relevant conduct.

But in the district court, the government didn't isolate § 1B1.3 "acts and omissions" from Arellanes-Portillo's money-laundering offenses and explain how they would justify the role adjustment under § 3B1.1(b).[14] And on appeal, the government goes far afield of § 1B1.3's precise terms by morphing relevant conduct into something that supplants the needed "act or omission" with a legal determination instead—that

---

[13] For instance, if Arellanes-Portillo had used a minor in a drug transaction, that "act" would be relevant conduct to the application of § 3D1.4 ("Using a Minor to Commit a Crime") in calculating the advisory range under § 2D1.1, but it wouldn't be relevant conduct in calculating the advisory range under § 2S1.1. Conversely, if Arellanes-Portillo had gotten in a high-speed chase and recklessly endangered others while taking drug proceeds to Mexico, that act would be relevant conduct to the application of § 3C1.2 ("Reckless Endangerment During Flight) in calculating the advisory guideline range under § 2S1.1, but not under § 2D1.1.

[14] We agree that a § 1B1.3 "act or omission" for one offense could be an act or omission for another offense too. In *United States v. Irvin*, 682 F.3d 1254, 1277 (10th Cir. 2012), we stated that acts relevant to a bank-fraud conspiracy could also be relevant to money laundering. But such a dual "act or omission" could achieve that status only by independently charting through § 1B1.3 for each of the offenses. It may be much easier to do that for the two offenses in *Irvin* than for the drug and money laundering offenses in this case.

"Arellanes-Portillo's role in the drug-trafficking organization as a whole" qualifies as "relevant conduct with respect to his role in the money-laundering offenses[.]" Appellant's Br. at 15.[15] We will stick with § 1B1.3 as written.

### B. Plain Error

Error may be plain based on the text of statutes or Guidelines. *See United States v. Powell*, 767 F.3d 1026, 1035 (10th Cir. 2014). As mentioned, § 2S1.1's Application Note 2(C) requires that all Chapter Three adjustments "be determined based on the offense covered by [the money-laundering] guideline (*i.e.*, the laundering of criminally derived funds) and *not on* the underlying offense from which the funds were derived." § 2S1.1(a)(1) cmt. n.2(C) (emphasis added). Failing to heed this instruction is error that is plain. *See del Carpio Frescas*, 932 F.3d at 332 (concluding the district court plainly erred by basing an aggravated-role adjustment "on del Carpio's *wire fraud* conduct, not his *money laundering* conduct" contrary to § 2S1.1's Application Note 2(C) (emphasis in original)); *Capps*, 977 F.3d at 257 ("[T]he District Court erred in applying the 2-level

---

[15] In support of its contrary view, the government cites *United States v. Lopez*, 743 F. App'x 489 (3d Cir. 2018) and *United States v. Ramirez*, 555 Fed. App'x 315, 322 (5th Cir. 2014). But even assuming these unpublished cases support the government's view, they would succumb to published cases from the same circuits enforcing § 2S1.1's Application Note (2)(C). *See United States v. Capps*, 977 F.3d 250, 256–57 (3d Cir. 2020) (confining the § 2S1.1 aggravating-role analysis to money-laundering conduct and excluding all underlying mail-fraud conduct from that analysis); *United States v. del Carpio Frescas*, 932 F.3d 324, 332 (5th Cir. 2019) (reversing a district court's abuse-of-trust adjustment for money laundering, because "the [district] court fixated on the wire fraud conduct, not the money laundering conduct").

abuse of trust adjustment [based on mail fraud] to the money laundering offense calculation. Given the text of Commentary Note 2(c), we think the error is plain.").

Moreover, our court has instructed that Chapter Three adjustments for money-laundering offenses and their underlying offenses are independently calculated on their own relevant conduct. *See, e.g.*, *United States v. Keck*, 643 F.3d 789, 800–01 (10th Cir. 2009) (interpreting "Application Note 2(C) as governing only the applicability of adjustments on money-laundering convictions, as opposed to the offense calculations of other, related offenses"). And our fellow circuit courts uniformly abide by the direction given at § 2S1.1's Application Note 2(C). *See United States v. Salgado*, 745 F.3d 1135, 1138 (11th Cir. 2014) ("When the district court calculated Salgado's offense level under § 2S1.1(a)(1), it could base a role enhancement on his conduct in the money laundering conspiracy but not on his conduct in the underlying drug conspiracy."); *United States v. Rushton*, 738 F.3d 854, 859 (7th Cir. 2013) ("The ranges would not have been the same had the 2–level enhancement for abuse of trust been permissible. It is permissible in a money laundering case—but only when the abuse of trust relates to the money laundering itself rather than to the underlying offense[.]"); *United States v. Anderson*, 526 F.3d 319, 328–29 (6th Cir. 2008) (relying on § 2S1.1's Application Note 2(C) to reverse the district court's transporting a drug-offense-related Chapter Three mitigating-role adjustment to the sentencing calculation for the money-laundering crimes).

## C.    Substantial Prejudice

Next, Arellanes-Portillo must establish that the error affected his substantial rights. To do so, he must show that "an error was prejudicial, meaning that there is a reasonable

14

probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc) (quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (quoting *Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002)). "Confidence in the outcome can be undermined even if [his] showing would not satisfy the preponderance-of-the-evidence standard." *United States v. Yurek*, 925 F.3d 423, 446 (10th Cir. 2019).

The government contends that Arellanes-Portillo has failed to show substantial prejudice, relying partly on *United States v. Gehrmann*, 966 F.3d 1074 (10th Cir. 2020). In that case, we affirmed an aggravated-role adjustment after concluding that "[t]he district court's findings as supplemented by undisputed facts show that Dr. Gehrmann acted as an organizer[.]" *Id.* at 1084. The government asks us to affirm based on undisputed evidence here too.

But as Arellanes-Portillo notes, the government doesn't have equally strong underlying district-court findings and undisputed facts here as compared to *Gehrmann*. For instance, here we lack critical district-court findings about the identity or number of "participants," as needed to apply § 3B1.1(b). This means that the government is asking us to determine—in the first instance—what persons qualify as participants in the money-laundering offenses. In doing so, we would have to determine what persons are "criminally responsible for the commission of the offense," including those persons not even convicted. *See* § 3B1.1 cmt. n.1. That calls for determinations of witness credibility

15

and of offense elements including knowledge and intent. From a cold record, that is a tall order. We conclude that those determinations are best left to the district court on remand.

Alternatively, the government asks us to affirm on grounds that the criminal activity was "otherwise extensive." *See* § 3B1.1(b). And it correctly notes that in *Gehrmann*, we acknowledged that we could reach this issue even if the district court hadn't. 966 F.3d at 1082 (citing *United States v. Belfrey*, 928 F.3d 746, 751 (8th Cir. 2019)). But we agree with Arellanes-Portillo that this isn't an appropriate case to do so. As he points out, this issue first arises in the government's appellate response brief. We again think it best to leave this to the district court to address on remand.

With all this in mind, we return to whether Arellanes-Portillo has shown a "reasonable probability" that "but for the error," "the result of the proceeding would have been different." *Bustamante-Conchas*, 850 F.3d at 1138. We are satisfied that he has shown that reasonable probability. If, on remand, the district court were to determine only that the money-laundering offenses involved fewer than five participants, Arellanes-Portillo's aggravating-role adjustment would fall one offense level, leaving his advisory range at 168–210 months of imprisonment. And if the district court were to decline to apply an aggravating-role adjustment, his total offense level would fall two levels to 34 (as the drug convictions would provide a higher total offense level then). That would leave an advisory guideline range of 151–188 months of imprisonment. For all reasons

given, our confidence in the outcome is undermined. So we conclude that Arellanes-Portillo has shown substantial prejudice.

### D.    Fairness, Integrity, or Public Reputation of Judicial Proceedings

For the fourth prong of plain-error analysis, Arellanes-Portillo must show that the error "affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014). We conclude that he has met that burden here. Ordinarily, when an error affects the calculation of a defendant's guideline range and the first three prongs are satisfied, the fourth prong is also met. *See Yurek*, 925 F.3d at 447. That is because reasonable citizens would "bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands[.]" *Sabillon-Umana*, 722 F.3d at 1333–34. Though Arellanes-Portillo may ultimately fail in lowering his advisory guideline range, we see a sufficient basis on which the district court might impose a lower advisory guideline range. In that circumstance, we conclude that he has met his needed showing on this final prong of plain-error review.

### CONCLUSION

In sum, Arellanes-Portillo has met his burden under the plain-error standard regarding the three-level aggravating-role adjustment. So we vacate his sentence and remand for resentencing consistent with this opinion.