NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0399n.06

No. 23-5514

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 02, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAVIER H. RODRIGUEZ,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

OPINION

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Javier Rodriguez ran a large drug-trafficking organization. As part of his illicit operation, Rodriguez helped murder a drug dealer whom he suspected had taken part in a robbery of the organization. Rodriguez pleaded guilty to drug and firearm offenses for his crimes. At his sentencing, the district court imposed an aggravating-role enhancement because Rodriguez had been a "manager" of the drug operation and because the operation had "involved five or more participants[.]" U.S.S.G. § 3B1.1(b). Rodriguez objected to this enhancement. He primarily argued that, because the court had used the murder guideline to calculate his base offense level, it could not use the drug-trafficking guideline to impose the enhancement. He added that his murder involved only three (not five) coconspirators. We disagree and affirm.

I

Because Rodriguez did not dispute his presentence report's description of the events, we rely on that report to summarize most of the facts. *See* Fed. R. Crim. P. 32(i)(3)(A); *United States*

*v. Warren*, 2023 WL 1961222, at *1 (6th Cir. Feb. 13, 2023). In late 2016, the Drug Enforcement Administration learned of a large drug-trafficking organization in Louisville, Kentucky, run by Rodriguez's father. The organization regularly imported kilograms of illegal drugs, including methamphetamine, heroin, and cocaine, for resale in Louisville.

Starting in November 2017, the DEA used a confidential source to buy large quantities of drugs from Rodriguez. Wiretaps also disclosed Rodriguez's conversations managing the drug operation. He often negotiated drug deals with "multiple sources of supply" in the United States and Mexico. Rep., R.471, PageID 4477. When the large shipments of drugs arrived in Louisville, Rodriguez would coordinate with an accomplice, Dwain Castle, to store the drugs at various "stash" houses. *Id.* Rodriguez also tasked Castle with redistributing the drugs to lower-level dealers for their ultimate sale to end users.

In January 2018, Rodriguez learned of a lucrative deal from another member of the drug-trafficking organization: Vincent Ramirez. According to Ramirez, a new buyer wanted a kilogram of heroin for $70,000. Unsure of this buyer's trustworthiness, Rodriguez took precautions when setting up the deal. The precautions proved warranted. At the exchange site, another (unknown) individual began firing at Rodriguez and Castle. A shootout ensued. This individual successfully made off with the $70,000 worth of heroin.

After the robbery, an angry Rodriguez wanted revenge. And the supplier of the stolen heroin offered to forgive his $70,000 debt if the robbers were "taken care of." *Id.*, PageID 4479. Ramirez, by contrast, felt remorse because he had unwittingly arranged the deal gone bad. To make up for it, Ramirez offered to sell Rodriguez's marijuana without taking a cut. This offer failed to smooth things over. Rodriguez soon came to suspect that Ramirez had participated in the

robbery. Rodriguez and Castle told another member of the organization, Charles Cater, that they would pay him $15,000 to kill Ramirez.

The three men carried out this murder. Rodriguez instructed Ramirez to meet at a certain location to obtain the marijuana. Rodriguez, Castle, and Cater drove to this location together. Rather than provide marijuana, Cater walked up to Ramirez's car and shot him. Ramirez died. Rodriguez and Castle then picked up Cater and fled.

A federal grand jury indicted Rodriguez on five counts. It charged him with using a firearm during a drug-trafficking crime that resulted in Ramirez's murder. *See* 18 U.S.C. § 924(c)(1)(A), (j)(1). It also charged him with conspiring to possess with the intent to distribute various amounts of several drugs from November 2017 to February 2018. *See* 21 U.S.C. §§ 841(a)(1), 846. And it charged him with three counts of possession with the intent to distribute various drugs. *See id.* § 841(a)(1). Rodriguez pleaded guilty to all counts without a plea agreement.

At sentencing, the parties agreed on the starting point for Rodriguez's guidelines range. Neither party disputed that the guideline for first-degree murder (U.S.S.G. § 2A1.1) applied to Rodriguez's four drug offenses, not just his murder offense. Why? The drug-offense guideline contains a cross-reference that instructs courts to use this murder guideline "[i]f a victim was killed under circumstances that would constitute murder" and if the use of the murder guideline would lead to a higher offense level. U.S.S.G. § 2D1.1(d)(1). This cross-reference generated the highest possible base offense level: 43. *See id.* § 2A1.1(a).

The parties' agreement ended there. They disagreed over whether the district court should increase this base offense level under U.S.S.G. § 3B1.1. This guideline directs courts to increase the offense level between two and four levels if a defendant had an "aggravating role" in the crime. *See id.* § 3B1.1(a)–(c). As relevant here, subsection (a) imposes a four-level enhancement "[i]f

3

the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" *Id.* § 3B1.1(a). And subsection (b) imposes a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader)" in the same type of criminal activity. *Id.* § 3B1.1(b). Relying on Rodriguez's drug operation, the government requested a four-level increase because Rodriguez had organized or led the conspiracy and because the conspiracy had involved at least five coconspirators. In response, Rodriguez pointed out that the government had relied on the murder cross-reference for his drug offenses and that this murder included only three participants: Rodriguez, Castle, and Cater. According to Rodriguez, the government could not use the murder to choose the base offense level but then switch to the drug conspiracy to identify the five participants for the aggravating-role enhancement.

The district court partially sided with the government. The court reasoned that it was "well within the nature of [§] 3B1.1 to take into account the entire conspiracy" when deciding whether Rodriguez's "criminal activity" "involved five or more participants[.]" Sent. Tr., R.500, PageID 4722; U.S.S.G. § 3B1.1(a). And it held that this conspiracy had at least five participants. But it applied only a three-level enhancement because it found that Rodriguez had been a "manager or supervisor" rather than an "organizer or leader" of the drug-trafficking ring. U.S.S.G. § 3B1.1(b). The court calculated Rodriguez's guidelines range as life imprisonment. It varied downward by sentencing him to a total of 480 months' imprisonment.

II

On appeal, Rodriguez renews his challenge to the aggravating-role enhancement. Recall that this guideline directs courts to increase a defendant's offense level by three "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved

4

five or more participants or was otherwise extensive[.]" U.S.S.G. § 3B1.1(b). This text requires a court to make two basic findings. *See Warren*, 2023 WL 196122, at *3. The defendant must have been a "manager or supervisor" of the "criminal activity." U.S.S.G. § 3B1.1(b). And this activity must have "involved five or more participants" or been "otherwise extensive[.]" *Id.*

When evaluating a district court's use of this enhancement, we review its factual findings for clear error. *See United States v. Sexton*, 894 F.3d 787, 794 (6th Cir. 2018). We review its legal conclusions de novo. *See United States v. Minter*, 80 F.4th 753, 757 (6th Cir. 2023). And we give "deferential" review to its ultimate holding that the historical facts satisfied our legal standards. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

If Rodriguez's drug conspiracy was part of the "criminal activity" that we may consider under § 3B1.1(b), the district court's decision easily meets these review standards. Start with the "manager or supervisor" element. Although Rodriguez now hints that he did not manage the drug operation, Appellant's Br. 12–13, his counsel conceded in the district court that Rodriguez had a "managerial" role. Sent. Tr., R.500, PageID 4717. Trial counsel even agreed to "stipulate that [Rodriguez] had managerial discretion." *Id.*, PageID 4723. So Rodriguez waived any contrary claim. *See United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023).

Turn to the element requiring "five or more participants." The district court did not commit a clear error by finding that Rodriguez's drug operation included at least five participants. *See Sexton*, 894 F.3d at 794. If anything, the presentence report shows that the operation had well over this many actors: Rodriguez himself, Castle, Cater, Ramirez, an associate nicknamed "Burnt Rubber," Rodriguez's "multiple sources of supply," and the "lower level traffickers" that resold the drugs. Rep., R.471, PageID 4477–79. In response, Rodriguez criticizes the district court's use of the presentence report to find the historical facts. But he did not object to any of these facts and

so the court could treat them as "undisputed" when calculating his guidelines range. Fed. R. Crim. P. 32(i)(3)(A); *see United States v. Baker*, 559 F.3d 443, 449 (6th Cir. 2009).

All of this said, our analysis began with the assumption that we could consider Rodriguez's drug conspiracy when deciding whether the aggravating-role enhancement should apply. And Rodriguez next claims that we must ignore this drug conspiracy. He relies on the district court's decision to invoke the cross-reference to the first-degree murder guideline when calculating his base offense level for his drug crimes. *See* U.S.S.G. § 2D1.1(d)(1). Once the district court relied on this murder cross-reference, Rodriguez says, the court should have evaluated the aggravating-role enhancement by reference only to the murder, not the drug conspiracy.

The aggravating-role guideline says little on this topic. It requires a court to consider whether a defendant was a manager of "criminal activity" but does not define this phrase. *Id.* § 3B1.1(b). Another guideline clarifies the phrase in part. *See id.* § 1B1.3(a). Section 1B1.3 provides an expansive definition of the "relevant conduct" that courts must consider when making "adjustments" under Chapter Three. *Id.* The introductory comment to Part 3B (which contains the aggravating-role guideline) reiterates that courts should consider "all conduct within the scope of § 1B1.3 (Relevant Conduct)" and not focus "solely on the . . . elements and acts cited in the count of conviction." *Id.* § 3B intro. cmt. This relevant conduct can include, among other things, the defendant's "acts" committed "during the commission of the offense of conviction[.]" *Id.* § 1B1.3(a)(1).

But this clarification leads to an order-of-operations question: Should we start with the murder and ask if the drug conspiracy was "relevant conduct" to this violent crime? Or should we start with the drug conspiracy and ask whether the murder was "relevant conduct" to this drug crime? The district court simply said it could consider the "entire conspiracy" without answering

this question. Sent. Tr., R.500, PageID 4722. And the parties' briefing does not directly address the question either. We see room for reasonable debate. On the one hand, the "offense of conviction" for Rodriguez's drug conspiracy was the conspiracy itself. U.S.S.G. § 1B1.3(a)(1). In a similar case, then, we have relied on the drug conspiracy to determine the propriety of an aggravating-role enhancement even after applying the murder cross-reference in § 2D1.1(d)(1). *See United States v. Anderson*, 795 F.3d 613, 616–18 (6th Cir. 2015). On the other hand, *Anderson* did not expressly consider this order-of-operations question. And a separate guideline (one that Rodriguez has not cited) contains special instructions for the use of cross-references. It says that "[i]f the offense level is determined by a reference to another guideline," "the adjustments in Chapter Three (Adjustments) also are determined in respect to the referenced offense guideline, except as otherwise expressly provided." U.S.S.G. § 1B1.5(c). One might read this language to require courts to start with the conduct underlying the cross-referenced offense (the murder) rather than the offense of conviction (the drug conspiracy). *Cf. United States v. Scott*, 70 F.4th 846, 863–64 (5th Cir. 2023); *United States v. Arellanes-Portillo*, 34 F.4th 1132, 1138–40 (10th Cir. 2022).

Ultimately, though, we need not decide this unbriefed issue. Rodriguez has never claimed that the drug conspiracy would fail to qualify as "relevant conduct" for the murder. Indeed, he admitted orchestrating the murder "during" his "conspiracy to distribute controlled substances." Plea Tr., R.352, PageID 3213–14; *see* 18 U.S.C. § 924(c)(1)(A), (j)(1). Given Rodriguez's failure to dispute the point, the district court could treat the drug conspiracy as relevant conduct even if it should have started with the murder as its frame of reference for the aggravating-role enhancement.

Rather than argue that the conspiracy was not relevant conduct for the murder, Rodriguez instead suggests that § 3B1.1 limits our review to the "offense of conviction" and ignores "relevant conduct." Reply Br. 5. But he offers no reasoning to support this claim. Section 1B1.3 instructs

7

courts to consider relevant conduct when making adjustments (like the aggravating-role adjustment) "[u]nless otherwise specified."   U.S.S.G.  § 1B1.3(a).   And Rodriguez points to nothing in § 3B1.1 that specifies otherwise.  So we have long held that district courts may rely on relevant conduct when deciding whether to impose an aggravating-role enhancement.  *See United States v. Townsend*, 396 F. App'x 239, 243 (6th Cir. 2010); *United States v. Ushery*, 968 F.2d 575, 581–82 (6th Cir. 1992); *see also United States v. Bjorkman*, 270 F.3d 482, 496 (7th Cir. 2001) (per curiam).

We affirm.